162 So. 734

**RUIZ v. CLANCY et al.**

No. 33284.

July 1, 1935.

Rehearing Denied July 18, 1935.

S. T. Cristina, G. E. Konrad, and H. W. & H. M. Robinson, all of New Orleans, for applicant.

John May, of New Orleans, for respondents.

O'NIELL, Chief Justice.

The district court dismissed this suit on an exception of no cause or right of action, and the judgment was affirmed by the Court of Appeal. The suit is for damages for the death of the plaintiffs' mother, Mrs. Christopher Lochbaum, who died of injuries suffered in an accident, while she was riding in an automobile, as one of several guests of her husband, who was driving the car. The plaintiffs are the two minor children of Mr. and Mrs. Lochbaum, represented by their tutrix, Mrs. Arthur Ruiz. She alleges that Christopher Lochbaum, father of the children, also is dead. We infer from the circumstances of the case—although it is not alleged—that both Mr. and Mrs. Lochbaum died of injuries suffered in the same accident. It is alleged that Lochbaum negligently ran into the rear end of a truck that was parked on the side of the road, his negligence consisting of his failure to see the truck.

The suit was brought against three parties, namely, (1) Frank J. Clancy, who is sheriff of Jefferson parish, and who owned the automobile; (2) the administrator of the succession of Christopher Lochbaum, who was a deputy sheriff under Clancy at the time when Lochbaum was driving the ill fated automobile; and (3) the Travelers Insurance Company, insurer of Clancy against liability for damages because of bodily injury, including death, accidentally sustained by any person or persons and caused by the ownership, maintenance, or use of the automobile.

The liability of the insurer is limited, by the terms of the policy, to $25,000 for all damages arising out of bodily injuries or death of one person, and, subject to that limitation, is limited to $50,000 for all damages arising out of bodily injuries or death of two or more persons in any one accident.

The so-called coverage, or liability of the insurer, is to pay, on behalf of the assured, all sums which the assured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of bodily injury, including death at any time resulting therefrom, accidentally sustained by any person or persons and caused by the ownership, maintenance, or use of the automobile. It is stipulated in the policy that the unqualified word "assured," wherever it is used in or is applicable to the coverage of liability for bodily injury, includes not only the named assured (Frank J. Clancy) but also any

other person while legally using the automobile, or legally responsible for the use thereof, provided the disclosed and actual use be for "Pleasure and Business," as defined in the policy, and provided that such use be with the permission of the named assured.

■ The policy is said to be subject to the condition that no recovery against the company shall be had until the amount of the assured's obligation to pay shall have been finally determined, either by judgment against the assured after actual trial, or by written agreement of the assured and the claimant and the company. This stipulation, however, must yield to the provisions of Act No. 55, of 1930, which allows an injured person to bring suit against the liability insurer without making the insured a party to the suit. In fact, one of the conditions stated in the policy is that any specific statutory provision in force in the state in which it is claimed that the insured is liable for any such loss as is covered by the policy shall supersede any provision in the policy inconsistent therewith.

The plaintiffs are claiming only the damages which they, the minor children of Mrs. Lochbaum, have suffered by the loss of the companionship and care and affection of their mother, and for the grief which the sudden death of their mother brought upon them. There is no claim for damages for sufferings endured by the mother, as to which a right of action might have survived in favor of her minor children, under the provisions of Act No. 223 of 1855, amending article 2315, which was then article 2294 of the Civil Code. The damages here claimed are only the damages for which a right of action was given by the amendment of article 2315 of the Civil Code, by Act No. 71 of 1884, to "the survivors above mentioned," in Act No. 223 of 1855, being originally only the minor children or widow of the deceased, or either of them, but now including other relations, by virtue of the amendments made by Act No. 120 of 1908 and Act No. 159 of 1918.

■ Act No. 55 of 1930, amending and re-enacting the title and the first section of Act No. 253 of 1918, declares that it shall be illegal for any company to issue any policy "against liability" unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy; and the statute provides that the injured person or his heirs, at their option, shall have a right of direct action against the insurer, within the terms and limits of the policy, either in the parish where the accident or injury occurred or in the parish where the assured has his domicile, and that the action may be brought either against the insurer alone or against both the assured and the insurer, jointly and in solido. The statute provides further that nothing contained therein shall be construed to affect the provisions of the policy contract if

they are not in violation of the laws of the state; and the statute declares that its intent is that any action brought thereunder shall be subject to all of the lawful conditions of the policy contract, and be subject to the defenses which could be urged by the insurer to a direct action brought by the insured, meaning, of course, an action brought by the insured against the insurer to recover for a liability for which the insured was judicially compelled to pay for an injury sustained by a third party. The statute does not purport to interfere with the right of an insurance company to limit the so-called coverage, "in any policy against liability," to "liability imposed upon him [the assured] by law," as this policy provides. An insurance company therefore, may—as the company did in this instance—limit the coverage, or liability of the company, to the obligation to pay only such sums as the insured shall become obligated to pay by reason of the liability imposed upon him by law. The attorney for the insurance company contends that the statute would interfere with the freedom of parties to enter into contracts, and would be therefore unconstitutional, if it forbade insurers to limit their so-called coverage, in liability insurance policies, so as to cover only the legal liability of the insured. The statute does not purport to do that, by merely giving to an injured person a right of action against the insurer, and by compelling the insurer to respond —within the limits of the policy—to the obligation of the insured.

It is virtually conceded, therefore, that the minor children of Mrs. Lochbaum have no cause or right of action against the insurance company unless they have a cause of action against either Clancy or the administrator of the succession of Lochbaum.

■■ The plaintiffs have no cause of action against Clancy. They claim a cause of action against him under the law of master and servant, and the doctrine of respondeat superior. It is alleged that Lochbaum, in driving the automobile, at the time of the accident, was acting within the scope of his employment, as deputy sheriff and as an employe of Clancy, and with Clancy's knowledge and consent. But it is alleged also that Mrs. Lochbaum was in the car as one of several guests of her husband. Hence she was not in the custody of the deputy sheriff, officially, or being escorted somewhere to serve as a witness or juror, or to have part in any matter in which the office of the sheriff might have been concerned. It is not even alleged that Mrs. Lochbaum's being in the automobile was with the consent or knowledge of Clancy. The employer of the driver of an automobile is not liable for damages for the accidental injuring or killing of a person whom the driver has invited to ride with him, and who while so riding as his guest is injured or killed in an accident caused by negligence on the part of the driver, in a case where the guest's riding in the automobile was without the consent or knowledge of the employer of the driver, and was not within the scope of, or in any way

connected with, the employment of the driver. It was so decided by the Court of Appeal for the Second Circuit, in Jefferson v. King, 12 La. App. 249, 124 So. 589, and the ruling was affirmed by this court by the denial of a writ of review, on the ground that the judgment was correct.

■ It is argued on behalf of the insurance company that the plaintiffs have no cause or right of action against the succession of the deceased Lochbaum because it is against public policy for a child to sue his father for damages for an alleged tort, and because it is declared in article 104 of the Code of Practice that children under parental authority shall not bring suit against their parents. The article of the Code of Practice declares:

"Children, as long as they are subjected to paternal power, that is to say, while their fathers and mothers are living and they not emancipated, can not bring suit against them."

The expression "while their fathers and mothers are living" conveys the implication that a suit may be brought on behalf of an unemancipated child against the succession of a deceased parent of the child; because, otherwise, the expression "while their fathers and mothers are living" would be redundance. To say that an unemancipated child cannot sue his parents while they are living leaves the implication that an unemancipated child may, through his guardian or tutor, sue the succession of a deceased parent of the child. Before

article 104 of the Code of Practice was adopted, suits by children against their parents were deplored and discouraged, but not forbidden. The reason why such suits were deemed objectionable was explained in Bird v. Black, 5 La. Ann. 189, 196, thus:

"The decisions of this court have not encouraged suits of children against their parents, unless to redress clear and palpable injustice. There are services which parents render to their children, and which it is presumed they perform until the contrary appears, which money cannot buy; and filial duty should restrain the child from exposing the faults of its parents, or worrying them with litigation, unless compelled by extreme necessity."

A great majority of the courts of this country adhere to the common-law rule that a minor child cannot sue his father or mother for a personal tort. A list of the decisions appears in the annotation to Dunlap v. Dunlap, 84 N. H. 352, 150 A. 905, 915, 71 A. L. R. 1055. In that case the New Hampshire Supreme Court held that a minor child could recover damages from his father for bodily injuries suffered by reason of negligence rendering a master liable to a servant, where the father, who was the employer of the child, was protected by liability insurance. The court expressed a doubt about the soundness of basing the rule of nonliability of the parent to the child upon a relative incapacity to sue. The court said that out of all of the discussion on the subject only one substantial or reasonable ground for denying

liability in such cases had emerged; and that was that the parental authority should be so far supreme that whatever would unduly impair it should be foregone by the child for his ultimate good. It was held that where the father was protected by insurance against financial loss or liability, and the suit could not impair or affect in any way the parental authority, there was no reason for an application of the rule of incapacity to sue. The conclusions of the court were summed up thus:

"Such immunity as the parent may have from suit by the minor child for personal tort arises from a disability to sue, and not from lack of violated duty. This disability is not absolute. It is imposed for the protection of family control and harmony, and exists only where a suit or the prospect of a suit might disturb the family relations. Stated from the viewpoint of the parent, it is a privilege, but only a qualified one. * * * It does not apply to an emancipated child, or to a case where liability in fact has been transferred to a third party."

An heir or universal legatee who has accepted unconditionally the succession of a deceased tort-feasor may be sued for civil reparation for the injury which the deceased has done, even though no suit therefor was brought during his lifetime, and, even though neither he nor his succession was benefited by the wrongdoing. Code Prac. art. 25; Edwards v. Ricks, 30 La. Ann. 926; Dirmeyer v. O'Hern, 39 La. Ann. 961, 3 So. 132, cited with approval in Johnson v. Levy, 118 La. 447, 43 So. 46, 9 L. R. A. (N. S.) 1020, 118 Am. St. Rep. 378, 10 Ann. Cas. 722. So, also, may an injured party sue the administrator of the succession of a deceased tort-feasor for compensatory damages. Smith v. Nicholson, 6 La. Ann. 704. When the heirs at law, who have not accepted the succession unconditionally, sue the administrator of the succession, they are not suing themselves, so to speak, because their rights as creditors are superior to their rights as heirs in the estate of the deceased person.

Our conclusion, therefore, is that the minor children of the deceased, Chistopher Lochbaum, have a right of action against the administrator of his succession.

The decision rendered by the Court of Appeal in this case, denying the minor children a right of action against the administrator of the succession of their father, is founded upon the fact that the damages which the children are claiming are only such as may be due to them by reason of the injury which caused their mother's death, and upon the theory that, as the mother could not have sued her husband for damages for the injuries sustained by her, neither could her heirs have sued him for the fatal consequence of the injuries suffered by her. The Court of Appeal cites the decision rendered by this court in Vitale v. Checker Cab Co., 166 La. 527, 117 So. 579, 59 A. L. R. 148. That decision, however, had nothing to do with the rule of incapacity of the wife to sue the

husband, or immunity of the husband against a suit by the wife, or immunity of the parent against a suit by a minor child. Mrs. Vitale suffered bodily injuries and her husband was killed in a collision between a truck which he was driving (and in which Mrs. Vitale was riding) and a taxicab belonging to the Checker Cab Company. Mrs. Vitale sued the Checker Cab Company for damages for the bodily injuries which she had suffered and also for the loss of support and companionship of her husband. The Checker Cab Company pleaded contributory negligence on the part of Vitale. The evidence in the case showed that the accident was caused by the negligence of both Vitale and the driver of the taxicab. As to the damages claimed by Mrs. Vitale for the bodily injuries which she had suffered, the ruling was that the contributory negligence of her husband could not be imputed to her, and hence that she could recover the amount of these damages from the Checker Cab Company; but, as to the damages which Mrs. Vitale claimed for the death of her husband, the ruling was that, as her husband would have had no cause of action against the Checker Cab Company for damages for the bodily injuries which resulted in his death, because of his contributory negligence, neither did his wife have a cause of action for the loss which she suffered by reason of his death. The rule that there is no right of action for damages for the loss of the support or companionship of one whose death is caused directly or proxi-

mately by his own negligence against another whose negligence also contributed to the fatal result was established by the jurisprudence previous to the Vitale Case. Brown v. Texas & Pacific Ry. Co., 42 La. Ann. 350, 7 So. 682, 21 Am. St. Rep. 374; Barnhill v. Texas & Pacific Ry. Co., 109 La. 43, 44, 33 So. 63; Harrison v. Louisiana Western Railroad Co., 132 La. 761, 61 So. 782; Castile v. O'Keefe, 138 La. 479, 70 So. 481; Nelson v. Texas & Pacific Ry. Co., 140 La. 676, 73 So. 769; Nolan v. Illinois Central Ry. Co., 145 La. 483, 82 So. 590. See also Bunt v. Sierra Butte Gold Mining Co., 138 U. S. 483, 484, 11 S. Ct. 464, 34 L. Ed. 1031.

The ruling in the Vitale Case was referred to with approval in the opinion rendered in the case of Mrs. Carmen F. Palmer Edwards v. Royal Indemnity Co. 182 La. 171, 161 So. 191. In the latter case, Miss Carmen F. Palmer, before she was married to Edwards, suffered bodily injuries in an automobile accident, caused by the negligence of Edwards, who was driving the automobile. Miss Palmer sued Edwards for damages, and thereafter married him. On an exception to the capacity of the wife to proceed with her suit against her husband for damages for a tort, the suit was dismissed. Mrs. Edwards appealed, and, while the appeal was pending, she sued the insurance company, under the provisions of Act No. 55 of 1930. That suit also was dismissed on an exception of no cause or right of action; and Mrs. Edwards again appealed. The court of ap-

peal affirmed the judgment in both cases. See Palmer v. Edwards (La. App.) 155 So. 483, and, on rehearing (La. App.) 156 So. 781; and Edwards v. Royal Indemnity Co. (La. App.) 155 So. 472. On the application of Mrs. Edwards for a writ of review, this court approved the judgment dismissing the suit against Edwards, and refused to issue the writ, but granted the writ in the case against the Royal Indemnity Company, and reversed the judgment. The purport of the decision was that the abatement of Miss Palmer's right of action against Edwards, by effect of her marrying him, was a matter which did not concern the insurance company, because the abatement of the action against Edwards had nothing to do with the merits of the claim of Miss Palmer, or Mrs. Edwards, against either Edwards or the insurance company. The incapacity of the woman to prosecute the suit against Edwards· was only a relative incapacity on her part, or relative immunity on his part, and did not affect the rights of the insurance company any more than it would have affected the rights of the insurance company if Miss Palmer had merely refused to sue Edwards, and had not married him. Insurance is not like suretyship, in that an insurer who pays the loss has no recourse against the insured, as a surety who pays the debt has against the principal debtor. In Act No. 55 of 1930, the insurer and the insured are referred to as being liable in solido if the insured becomes liable for a claim for damages, but, in such case, the insurer is like the principal debtor. That is one of the effects of the act of 1930, in allowing an injured party to sue the insurer alone. The decision in Edwards v. Royal Indemnity Co. merely recognizes a distinction ·between a case where there is no cause of action against the insured, and hence no cause of action against the insurer, and a case where there is no right of action against the insured because of a relative incapacity of the injured party to sue the insured, or relative immunity of the insured against being sued by the injured party, in which case, according to Edwards v. Royal Indemnity Co., the injured party may have a right of action against the insurance company alone, under the act of 1930. With regard to the merits of a claim against an insured, the statute does not give the claimant a right of action against the insurance company unless the claim against the insured is well founded in law. That is in accord with the language of the policy contract, and is not contrary to any provision of the statute. The last paragraph of the statute provides that, in a suit brought by an injured person against the insurance company alone, the company may urge any defenses which the company might urge in a suit brought against the company by the insured, to recover a loss which he has been compelled judicially to pay to the injured party. The Court of Appeal for the First Circuit, apparently, misconstrued this provision in the last paragraph of the statute, in Edwards v. Royal Indemnity Co., 155 So. 472, as

this court pointed out in reviewing the decision. In the present case, the plaintiffs' petition discloses a cause of action, and they have a right of action against Christopher Lochbaum, who, by the terms of the policy of insurance, is deemed to have been the insured.

The judgment of the district court and of the Court of Appeal is affirmed in so far as it maintains the exception of no cause or right of action against Frank J. Clancy and dismisses the suit against him; the judgment is annulled and reversed in so far as it maintains the exception of no cause or right of action against the administrator of the succession of Christopher Lochbaum and against the Travelers Insurance Company; and as to these defendants the exception of no cause or right of action is overruled, and the case is ordered remanded to the district court for further proceedings. The costs of the trial of the exception, and the costs of this appeal, are to be borne by the insurance company. The liability for other court costs is to depend upon the final disposition of the case.

BRUNOT and ODOM, JJ., dissent.