**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 98-31274
_____

WILLIAM J. McAVEY,

Plaintiff-Appellee,

v.

CHEN-HORNG LEE; CHIN-LI LEE,

Defendants-Appellees,

v.

FIRST FINANCIAL INSURANCE CO.,

Defendant-Appellant.

Appeal from the United States District Court
For the Eastern District of Louisiana
July 25, 2001

Before GARWOOD, WIENER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

William J. McAvey brought this diversity action against Chen-Horng Lee (Mr. Lee), his wife, Chin-Li Lee (Mrs. Lee), and Ming Chun, Inc. d/b/a Tomfort Lodge ("Ming Chun") (collectively, "the insureds" or "the innkeepers"), and First Financial Insurance Company ("First Financial"), the insureds' commercial liability insurer, for damages for personal injury to McAvey caused by the negligence of the insureds and their employees in failing to take

1

reasonable precautions and to exercise proper vigilance for the safety and security of their hotel guests. McAvey alleged that he fractured his heel while chasing two unidentified robbers who had taken his wallet by force in his Tomfort Lodge motel room. He further averred that the criminals entered the motel and the hall outside his room without detection by the motel employees, tricked him into opening his door, committed the robbery, and escaped without being identified or detained, because of the defendants' inadequate motel security and safety precautions and the negligence of the motel clerk in failing to exercise reasonable efforts to monitor and protect hotel guests against such dangers. At the close of the plaintiff's case at trial, the district court entered a judgment as a matter of law ("JMOL") dismissing the action against Mr. and Mrs. Lee. After completion of the trial, the jury returned a verdict in favor of McAvey, fixing damages and apportioning fault between him and the innkeepers. The district court rendered a judgment in McAvey's favor against First Financial.

First Financial appealed, contending, inter alia, that its policy excluded coverage for bodily injuries arising from assault or battery; that all of McAvey's injuries arose from a battery by the robbers; that the dismissal of the suit against two of First Financial's insureds, Mr. and Mrs. Lee, and the plaintiff's failure to properly serve the third insured, Ming Chun, effectively extinguished the plaintiff's right to a direct action and judgment against the insurer; and that the district court erred in not

2

instructing the jury to determine whether the fault of the unidentified criminals was a legal cause of McAvey's injuries, and, if so, to apportion a share of the fault and liability to them.

I.

McAvey, a truck driver, arrived in New Orleans, Louisiana, on the evening of November 6, 1995, with a load of household goods to be delivered the next morning. McAvey checked into the Tomfort Lodge, a modestly priced motel on Tulane Avenue.

Mr. and Mrs. Lee had purchased the building in which the Tomfort Lodge was located in 1988, and Mr. Lee had managed a motel business in the building from 1988 to 1995. At some point prior to 1993, the motel business was taken over by Ming Chun, Inc. ("Ming Chun"). The Lees leased the building to Ming Chun for minimum and percentage-of-profits rentals, pursuant to an oral agreement. In 1995, the Lees and Ming Chun signed a written lease formalizing their existing oral lease agreement. Mr. Lee continued to manage the motel business for Ming Chun.

According to McAvey, he was awakened around 11 p.m. the night of his stay at the Tomfort Lodge by a man who knocked on the door and announced himself as "motel security." When McAvey opened the door, two men forced their way in and hurled him onto the bed. As McAvey struggled with one assailant, the other grabbed McAvey's wallet and ran. McAvey pursued the robber outside the room and down

3

the motel stairs.  During the chase, the second robber made contact with McAvey as he passed McAvey on the stairs; McAvey's bare right heel landed on the edge of one of the steps, fracturing his heel bone.

McAvey filed suit in district court initially only against Mr. Lee.  First Financial, the innkeepers' commercial liability insurer, refused to defend the claim against Mr. Lee on the ground that McAvey's claim arose from a battery, a risk it alleged was excluded from coverage under the policy.  McAvey added Mrs. Lee as a defendant in his First Amended Complaint, and added Ming Chun and First Financial as defendants in his Second Amended Complaint.

First Financial moved for summary judgment on the basis that McAvey's loss arose from a battery, which it claimed was excluded from coverage by the policy.  On November 20, 1997, the district court denied the insurer's motion, holding that the documents constituting the insurance contract were ambiguous as to whether an assault and battery exclusion had been incorporated by reference and therefore must be construed in favor of coverage.  On August 8, 1998, for the same reasons, the district court granted Mr. and Mrs. Lee's motion for a partial summary judgment, decreeing that the policy did not include an assault and battery exclusion.

During trial, after McAvey rested his case-in-chief, the Lees' attorney, James Swanson, moved orally for a JMOL to dismiss the action against the Lees on the ground that "[t]here is no evidence . . . that Mr. Lee did anything that was unreasonable under the

4

circumstances. The evidence seems to be that at worse the desk clerk should have done something and he wasn't Mr. Lee's employee, he was the corporation's employee." The district court granted JMOL dismissing the action against the Lees "for the reasons argued by the plaintiff [sic]." Evidently, the district court meant "for the reasons argued by the defendants' attorney, Mr. Swanson." After the defendants presented their case-in-chief, First Financial moved for dismissal of Ming Chun on the grounds that the corporation had not been properly served pursuant to Federal Rule of Civil Procedure 4. After that motion was denied, First Financial moved for a JMOL pursuant to Rule 50(a)(2) to dismiss McAvey's suit on the grounds that Louisiana's direct action statute did not permit the maintenance of a direct action against an insurer when the insureds were no longer parties to the action, arguing that the Lees had been dismissed and Ming Chun, the only other insured, had not been properly served. The district court denied the motion and, after closing arguments and instructions, submitted the case to the jury.

The jury returned a verdict finding that the negligence of the innkeeper and McAvey were legal causes of McAvey's injury, charging the insureds with eighty percent of the fault and McAvey with twenty percent. The district court entered final judgment against First Financial as insurer of Ming Chun, awarding McAvey a net sum of $301,600 in damages after discounting his recovery by his apportioned fault. First Financial's motions for a JMOL and a new trial were denied. First Financial appealed from the district

court's final judgment.  McAvey appealed from the JMOL dismissing his action against the Lees.  Mr. and Mrs. Lee appealed from evidentiary and legal rulings made during the trial and the final judgment.  After appellate briefs had been filed, however, McAvey and the Lees settled the dispute between them.  Upon a joint motion by McAvey and the Lees, their appeals were dismissed by order of the Clerk of Court on July 21, 1999.[1]

## II.

### A.

First Financial contends that the policy for 1995, the applicable policy year, excluded coverage for losses arising from assault or battery; and that McAvey's injuries resulted from a battery.  We conclude, however, that (1) the policy did not exclude coverage for such losses and, (2) therefore, whether McAvey's injuries arose from a battery is irrelevant to determination of the insurer's liability.  This coverage issue was raised by Mr. and Mrs. Lee's partial motion for summary judgment, which the district court granted, and First Financial's motion for summary judgment, which

---

[1] The Lees reserved their rights as appellees regarding First Financial's appeal, insofar as that appeal implicated the propriety of the partial summary judgment awarded to the Lees on the issue of coverage.

was denied by the trial court.

"The general standard that an appellate court applies in reviewing the grant or denial of a summary-judgment motion is the same as that employed by the trial court initially under Rule 56(c)—a summary judgment is proper when it appears 'that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" 10A CHARLES ALAN WRIGHT, ARTHUR R. MILLER, & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2716 (1998) (quoting FED. R. CIV. P. 56(c)) (citing, inter alia, GATX Aircraft Corp. v. M/V Courtney Leigh, 768 F.2d 711 (5th Cir. 1985); McCrae v. Hankins, 720 F.2d 863 (5th Cir. 1983)). "[O]n summary judgment the inferences to be drawn from the underlying facts contained in such materials [such as affidavits, depositions, and exhibits] must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). "[W]e look at the record on summary judgment in the light most favorable to . . . the party opposing the motion . . . ." Poller v. Columbia Broad. Sys., Inc., 368 U.S. 464, 473 (1962); see also John v. La. Bd. of Trustees, 757 F.2d 698 (5th Cir. 1985); Simon v. United States, 711 F.2d 740 (5th Cir. 1983).

The record contains numerous documents pertaining to contracts of commercial general liability insurance between First Financial and Ming Chun. First Financial issued one new policy and two renewal policies for the annual policy periods commencing in 1993, 1994, and 1995, insuring Ming Chun against liability in connection

7

with the motel business and property: (1) First Financial New Policy No. F0070G400045; Named Insured: Ming Chun, Inc., DBA Carib Motel, 4025 Tulane Avenue, New Orleans, La. 70119; Policy period: April 25, 1993 to April 26, 1994 (hereinafter "1993 policy"); (2) First Financial Renewal Policy No. F0070G400045 R1; Named Insured: Ming Chun, DBA Comfort Lodge, 4025 Tulane Ave., New Orleans, La. 70119; Policy period: April 26, 1994 to April 26, 1995 (hereinafter "1994 policy"); (3) First Financial Renewal Policy No. F0070G400045 R-2; Named Insured: Ming Chun, DBA Tomfort Lodge, 4025 Tulane Ave., New Orleans, La. 70119[2]; Policy period: April 26, 1995 to April 26, 1996 (hereinafter "1995 policy").

Each policy incorporated and/or deleted by reference other documents, forms, and endorsements governing various aspects of coverage. The policies referred to the separate documents by company form numbers. Consequently, the contours of coverage of each policy cannot be determined without laboriously tracking down each pertinent document incorporated or deleted by reference among the numerous documents, forms, and endorsements in the record..

The 1993 policy, in pertinent part, provided: "Form(s) and Endorsement(s) made a part of this policy at time of issue: . . . CL150(11/85)[.]" (footnote and other forms listed omitted). That form, entitled "General Commercial Liability Coverage Part

_____

[2] The policy was amended on April 26, 1995, to change the named insureds to "Chen-Horng Lee, Chin-Li Lee, and Ming Chun Inc. DBA: Tomfort Lodge."

8

Declarations," filed of record with the 1993 policy, in pertinent part provides: "Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue: . . . BG-2-CW(9/92)[.]" (numerous others omitted). "BG-2-CW(9/92) (Intermediate Form)" contains exclusion BG-G-042 492 entitled "Exclusion–Assault Or Battery," which provides:

> Exclusion (a) of Coverage A (Section 1) is replaced by the following: a. 'bodily injury,' 'property damage,' or 'personal injury': (1) Expected or intended from the standpoint of any insured; or (2) Arising out of assault or battery, or out of any act or omission in connection with the prevention or suppression of an assault or battery.

The replaced Exclusion (a) provides: "This insurance does not apply to: a. 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property." Thus, the 1993 policy plainly excluded coverage of bodily and personal injury and property damage arising out of assault or battery.

The 1995 policy in effect at the time of McAvey's injury, however, failed to continue or re-adopt the assault or battery exclusion. The 1995 policy, in pertinent part, provides:

9

In consideration of the payment of the premium, it is agreed that the Policy designated herein is renewed for the period stated, subject to all its terms unless otherwise specified below.

RENEWAL TERMS:

. . . In consideration of our continuing coverage and the premium charged, you understand and agree that the following forms changes are made and apply, or no longer apply, as the case may be, to coverage provided by this policy.

These forms are deleted and no longer apply: FIF(4/89 Revised 5/92; BG-I-051(4/92); CG0001(11/88); CG0300(11/85); CG2244(11/85)

These forms are added and apply: FIF(4/89)Revised 6/94; BG-1-015(2/94); CG0001(10/93); CG0300(10/93); CG2244(10/93)

Form CG0001(10/93), the Commercial General Liability Coverage Form filed of record with the 1995 policy, provides in pertinent part: "2. Exclusions. This insurance does not apply to: a. Expected or Intended Injury[:] 'Bodily injury' or 'property damage' expected or intended from the standpoint of the insured. This exclusion does not apply to 'bodily injury' resulting from the use of reasonable force to protect persons or property."

But the foregoing quoted 1995 policy provisions clearly

10

deleted and made inapplicable Form CG0001(11/88), the original Commercial General Liability Coverage Form, which had been amended by the "BG-2-CW(9/92) (Intermediate Form)" that contained the BG-G-042 492 assault or battery exclusion.  The 1995 policy contains only the much narrower exclusion of injury or damage expected or intended by the insured, unless resulting from use of reasonable force to protect persons or property.  Consequently, it is evident that the 1995 policy did not continue or re-adopt the assault or battery exclusion.  Thus, McAvey's injuries arising out of assault or battery are not excluded from coverage under the 1995 policy.

Furthermore, assuming arguendo that it is reasonable to interpret the insurance documents as First Financial proposes, viz., that the parties' unexpressed intention was that the 1993 assault and battery exclusion would affect all future contracts unless expressly abrogated, that would only provide an alternative reading of an ambiguous contract.  We have recognized that Louisiana courts have required that insurance policy ambiguities be resolved in favor of coverage of the insured.  Huey T. Littleton Claims, Inc. v. Employers Reinsurance Corp., 933 F.2d 337, 340 (5th Cir. 1991) (citing Benton Casing Serv., Inc. v. AVEMCO Ins. Co., 379 So. 2d 225 (La. 1979); Stewart v. La. Farm Bureau Mut. Ins. Co., 420 So. 2d 1217 (La. Ct. App. 3d Cir. 1982)); accord LA. CIV. CODE ANN. art. 2056 (West 2000) ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text.  A contract executed in a standard form of one

11

party must be interpreted, in case of doubt, in favor of the other party."); <u>Crabtree v. State Farm Ins. Co.</u>, 632 So. 2d 736, 741 (La. 1994) ("If after applying the other general rules of construction an ambiguity remains, the ambiguous contractual provision is to be construed against the insurer who issued the policy and in favor of the insured."). Accordingly, even if we accept First Financial's contractual interpretation as a reasonable choice, we are constitutionally required, as <u>Erie</u> held,[3] to apply Louisiana law, which here mandates that we resolve the ambiguity by adopting the other reasonable interpretation that favors coverage for the benefit of the insured.

B.

First Financial next argues that the district court erred in rendering judgment against the insurer alone, because Louisiana's direct action statute, LA. REV. STAT. ANN. § 22:655 (West 2000), provides that "such action may be brought against the insurer alone

---

[3] <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938). Under <u>Erie</u>, when confronted with a diversity case arising under state law, we must apply the law of that state as the state's highest court would apply it. <u>Id.</u> at 78. If the decisions of that court are silent on an issue, we must conscientiously determine how that court would decide the issue before us, looking to the sources of law–including intermediate appellate court decisions of that state–that the state's highest court would look to for persuasive authority. <u>Transcont. Gas v. Transp. Ins. Co.</u>, 953 F.2d 985, 988 (5th Cir. 1992); <u>see also</u> 19 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4507, at 126 (2d ed. 1996).

12

only when" the insured is deceased, insolvent, unable to be served, engaged in bankruptcy proceedings, or a spouse, child, or parent of the plaintiff, and none of these exceptions applies in the present case. Id. § 655(B)(1)(a)-(e). In the absence of a Louisiana case on point, First Financial urges us to Erie guess that the Supreme Court of Louisiana would hold that the statute bars the district court's judgment against the insurer because none of the insureds was a party to the direct action against the insurer when final judgment was rendered against the insurer. According to First Financial's argument, McAvey "has no right of action without the presence of at least one of the insureds."

We do not think the State's highest court would reach that conclusion in the present case. On the contrary, as indicated by that court's previous decisions, we believe that it would hold that the injured plaintiff's substantive right and remedial direct action against the insurer and the insured tortfeasor accrues immediately upon the commission of the tort under the opening provisions of section 655(B). Because those provisions of the direct action statute have not been changed, we think that the Supreme Court of Louisiana would conclude that the accrual of the injured plaintiff's right and remedy against the insurer under the direct action statute has not been substantively altered. Instead, we believe that the court would decide that the section 655(B)(1)(a)-(e) provisions restricting suits against an "insurer alone," which were added to the end of that section by amendment in 1988, set forth a procedural

13

joinder requirement   that authorizes the insurer, subject to specified exceptions, to object to non-joinder of an insured and seek dismissal of the direct action if the insured is not joined.

First Financial's argument misinterprets the procedural joinder requirement of section 655(B)(1), ending in subparagraphs (a)-(e), as a substantive condition precedent to the injured plaintiff's right, remedy, and judgment against the insurer under the direct action statute.   Consequently, First Financial erroneously contends that the dismissal by directed verdict of McAvey's action against two of the insureds, Mr. and Mrs. Lee, and his alleged failure to properly serve the insured corporation, Ming Chun, nullified his substantive right, remedial action, and judgment against the insurer.

We are convinced that the Supreme Court of Louisiana would reject First Financial's theory of interpretation, however, because it is incompatible with the text, structure, history, and jurisprudential environment of the direct action statute.  Under First Financial's proposed reading of the direct action statute, the opening provision of section 655(B)(1) would be effectively repealed and the basic historical public purpose of the statute would be defeated; for it is the beginning provision of section 655(B)(1) that establishes for automobile accident victims and other injured plaintiffs substantive rights and remedial actions, accruing immediately with the insured tortfeasor's wrongful act, which are enforceable directly against the insurer to the same extent as

14

against the insured tortfeasor, subject to the coverage and limits of the liability insurance policy. The express purpose of the direct action statute, to ensure that all liability policies inure to the benefit of people injured through the fault of the insured, LA. REV. STAT. ANN. § 655(D) (West 2000), can be effectuated only through the substantive rights and direct remedial actions established by the initial provision of section 655(B)(1).

The first provision of section 655(B)(1), which has been the principal substantive part of the direct action statute since 1930, plainly states:

> The injured person or his or her survivors or heirs . . . at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both insured and insurer jointly and in solido . . . .

Id. (emphasis added). Without the creation of a substantive right for the injured plaintiff against the insurer by that provision, all else in the statute would be useless and meaningless. It is axiomatic that without a right there can be no remedy or action; and it is self-evident that without the plaintiff's right and action or remedy against the insurer there would have been no need for the legislature to create a procedural method whereby the insurer may

15

have the court require the joinder of insureds.  Unless the three elements of section 655(B)(1)–substantive right, remedial action, and procedural joinder–are understood as fulfilling three different legal purposes, they are irreconcilable and cannot all be given meaning as required by one of the paramount principles of statutory construction.  See LA. CIV. CODE ANN. art. 13 (West 2000) ("Laws on the same subject matter must be interpreted in reference to each other."); cf. id. art. 2050 ("Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole."); LA. REV. STAT. ANN. § 1:3 (West 2000) ("Words and phrases shall be read with their context and shall be construed according to the common and approved usage of the language."); see also ABL Management, Inc. v. Bd. of Supervisors of Southern U., 773 So. 2d 131, 135 (La. 2000) ("It is presumed that every word, sentence or provision in the statute was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. . . . The Legislature is presumed to have enacted each statute with deliberation and with full knowledge of all existing laws on the same subject. . . . Where it is possible, the courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions. . . . A construction of a law which creates an inconsistency should be avoided when a reasonable interpretation can be adopted which will not do violence to the plain words of the

16

statute and will carry out the Legislature's intention.").

Accordingly, we calculate that the Supreme Court of Louisiana would hold that section 655(B)(1) of the direct action statute consists of three complementary elements[4]: (1) the injured plaintiff's substantive right against the insurer, which accrues derivatively with his substantive right against the insured tortfeasor; (2) the injured plaintiff's direct action or remedy against the insurer; and (3) the procedural requirements, set forth in the provision ending with subparagraphs (a)-(e) of section

---

[4]  The distinctions between rights, remedies, and procedure have been clearly described  by Professor Dobbs.  See 1 DAN B. DOBBS, DOBBS LAW OF REMEDIES §§ 1.1-1.10, esp. §§ 1.1, 1.6, 1.7 (2d ed. 1993). Under common-law theory, a right is a creature of substantive law, a remedy is created by remedial law, and procedural rules are products of procedural law.  See id.

> The law of remedies is thus sharply distinguished from the substantive law of rights. It is also distinguished from the law of procedure.  Procedural law deals with the process of getting from right to remedy.  The methods for presenting both substantive and remedial issues are its concern.  Some remedies questions are closely connected with the substantive law or with procedural problems and more is to be said about that later.  For most purposes, however, remedies questions and remedies law are quite distinct from both substance and procedure.

Id. at 2.  Although in both civil-law and common-law theory, the concept of "right" is distinct from that of "action" or "remedy," civil law theory does not distinguish between procedure, action, or remedy but, in fact, considers all three to be part of "procedural law."  See A.N. YIANNOPOULOS, PROPERTY § 239, at 472-74 (2 LOUISIANA CIVIL LAW TREATISE) (3d ed. 1991).  In both common and civil law systems, rights and actions or remedies are interdependent corollaries; that is, if one has a right one may have an action or remedy, and vice versa.  See id.; 1 DOBBS, supra; JULIUS STONE, THE PROVINCE AND FUNCTION OF LAW: LAW AS LOGIC, JUSTICE, AND SOCIAL CONTROL, A STUDY IN JURISPRUDENCE 128-29 (reprint 1973).

17

655(B)(1), which, in effect, provide the insurer a procedural means to avoid defending a direct action alone, except in the circumstances listed, by objecting to the non-joinder of the insured.

Reading the pertinent provisions of the direct action statute together and in light of their historical development, the state and federal jurisprudence, and scholarly commentary further supports the foregoing conclusions. The direct action statute, in pertinent parts, provides:

> **B. (1) The injured person or his or her survivors or heirs mentioned in Subsection A, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and, such action may be brought against the insurer alone, or against both the insured and insurer jointly and in solido,[5] in the parish in which the accident or injury occurred or in the parish in which an action could be brought against either the insured or the insurer under the general rules of venue prescribed by Code of Civil Procedure Art. 42 only.** However, such action may be brought

---

[5] The foregoing constitutes the principal part of the direct action statute, which has not changed significantly since its enactment in 1930. See 1930 La. Acts 55.

18

against the insurer alone only when:

(a) The insured has been adjudged a bankrupt by a court of competent jurisdiction or when proceedings to adjudge an insured a bankrupt have been commenced before a court of  competent jurisdiction;

(b) The insured is insolvent;

(c) Service of citation or other process cannot be made on the insured.

(d) When the cause of action is for damages as a result of an offense or quasi-offense between children and their parents or between married persons; or

(e) The insured is deceased. [6]

* * *

**D. It is also the intent of this Section that all liability policies within their terms and limits are executed for the benefit of all injured persons and their survivors or heirs to whom the insured is liable; and, that it is the purpose of all liability policies to give protection and coverage to all insureds, whether they are named insured or additional insureds under the**

---

[6] Italicized subsection added by 1988 La. Acts 934. In subsequent amendments, the enumeration within this subsection was changed from 22:655(B)(1)-(5) to 22:655(B)(1)(a)-(e), 1989 La. Acts 117, and the provision for bringing action solely against the insurer in the case of the death of the insured was added as 22:655(B)(1)(f), 1992 La. Acts 584.

19

**omnibus clause, for any legal liability said insured may have as or for a tortfeasor within the terms and limits of said policy.[7]**

(bold and emphasis added).

The original act that became part of the present direct action statute was Act 253 of 1918.  That law made it illegal to issue a liability policy without a provision that, in case of the insured's insolvency or bankruptcy, the insurer would not be released, but subject to a direct action within the terms and limits of the policy by the injured person or his or her heirs.  1918 La. Acts 253.  In Edwards v. Fid. & Cas. Co., 123 So. 162 (La. Ct. App. Orl. 1929), the court of appeals upheld under the statute the right and action of a person injured by an insured tortfeasor to recover from the latter's insurer the amount of his unsatisfied judgment against the insured.  The court held that "the purpose of the statute [was] to create, immediately upon the happening of the accident, a cause of action in the injured party against the insurer . . . or the party at fault . . . conditioned upon the obtaining of a judgment against the party at fault and upon unsuccessful efforts to collect that judgment[.]"  Id. at 163.

In its next session, the legislature enacted Act 55 of 1930,

---

[7]  This second emboldened part of the statute was added by 1956 La. Acts 475.

20

codifying the Edwards holding and providing that the injured person, at his option, "shall have a right of direct action against the insurer . . . either against the insurer company alone or against both the assured and the insurer . . . jointly and in solido." That provision, without significant change, has been the principal part of the direct action statute ever since. See supra, at n. 5.

A series of Louisiana Supreme Court and court of appeals decisions subsequently held that under the direct action statute the insurer could not assert the insured's spousal, parental, or charitable immunity. Edwards v. Royal Indem. Co., 161 So. 191 (La. 1935) (holding similarly for tort occurring before marriage); Ruiz v. Clancy, 162 So. 734 (La. 1935) (holding that insurer could not plead father's immunity to suits from children); Rome v. London & Lancashire Indemnity Co. of America, 160 So. 121 (La. 1935), on remand, 169 So. 132 (La. Ct. App. Orl. 1936) (holding that insurer could not plead governmental immunity of insured); Harvey v. New Amsterdam Cas. Co., 6 So. 2d 774 (La. Ct. App. Orl. 1942) (holding that insurer could not plead insured husband's immunity from liability to wife); Messina v. Société Française, 170 So. 801 (La. Ct. App. Orl. 1936) (holding that insurer could not raise defense of immunity for hospital).

Act 475 of 1956 added the second emboldened provision quoted above at note 7, declaring that, within their terms and limits, all liability policies are executed for the benefit of all injured persons to whom the insured is liable and to protect and cover all

21

insureds for any liability they may have as or for a tortfeasor.

In <u>West v. Monroe Bakery, Inc.</u>, 46 So. 2d 122 (La. 1950), the Louisiana Supreme Court held an insurer liable to an injured victim despite the insured's violation of a policy condition by delaying without excuse in giving the insurer notice of the accident for more than a year. <u>Id.</u> at 129 ("[I]f at the time of injury, the circumstances are such that, under the terms and limits of the policy, the insurance carrier is liable, the rights of the injured party against the insurer under Act No. 55 of 1930 become fixed as of the moment of injury."); <u>accord</u> <u>Hedgepeth v. Guerin</u>, 691 So. 2d 1355, 1362 (La. Ct. App. 1st Cir. 1997); <u>Murray v. City of Bunkie</u>, 686 So. 2d 45, 49 (La. Ct. App. 3d Cir. 1997); <u>Elrod v. P.J. St. Pierre Marine, Inc.</u>, 663 So. 2d 859, 863 (La. Ct. App. 5th Cir. 1996); <u>Williams v. Lemaire</u>, 655 So. 2d 765, 767-68 (La. Ct. App. 4th Cir. 1995).

Of course, the injured person's right against the insurer, which is derived by the direct action statute from the plaintiff's right against the insured tortfeasor, generally is dependent upon that substantive delictual right for its existence and scope. <u>See, e.g.</u>, <u>Cacamo v. Liberty Mut. Fire Ins. Co.</u>, 764 So. 2d 41 (La. 2000) (holding that the direct action statute gives special rights to tort victims, not to insureds with contractual claims against their own insurer); <u>Descant v. Adm'rs of the Tulane Educ. Fund</u>, 639 So. 2d 246, 249 (La. 1994) (holding that the insured's medical malpractice

22

act cap also limits plaintiff's direct recovery from insurer).

The state supreme court and appellate courts, the United States Supreme Court, and this Circuit have recognized, however, that when the injured plaintiff acquires a valid right against the tortfeasor's insurer under the direct action statute, that right is substantive in nature. See Quinlan v. Liberty Bank & Trust Co., 575 So. 2d 336, 352 (La. 1991) (on reh'g) ("When the statute is applicable and authorizes a direct suit against a tortfeasor's insurer, the statute is read into and becomes a part of a policy written pursuant thereto, even though the policy does not contain the language required by the statute, or contains language prohibited by the statute. . . . [T]he Direct Action Statute is a mandate for a tort victim to bring a direct suit to recover damages for personal injury or corporeal property damage from the tortfeasor's insurer, regardless of whether the insurer has framed the policy as a liability or an indemnity contract.") (internal citations omitted); West v. Monroe Bakery, Inc., 46 So. 2d 122, 123 (La. 1950) ("[The direct action statute] has been treated consistently as conferring substantive rights on third parties to contracts of public liability insurance, which become vested at the moment of the accident in which they are injured"); Zimmerman v. Int'l Cos. & Consulting, Inc., 107 F.3d 344, 346 (5th Cir. 1997) (quoting Quinlan, supra); Auster Oil & Gas, Inc. v. Stream, 891 F.2d 570, 577-78 (5th Cir. 1990) (quoting Quinlan, supra) (citing West, supra); In re Combustion, Inc., 960 F. Supp. 1056, 1061 (W.D. La.

1997) (quoting <u>Quinlan</u>, <u>supra</u>); <u>accord</u> <u>Lumbermen's Mut. Cas. Co. v. Elbert</u>, 348 U.S. 48, 51 (1954) ("The Louisiana courts have characterized the statute as creating a separate and distinct cause of action against the insurer which an injured party may elect in lieu of his action against the tortfeasor"); WILLIAM S. MCKENZIE & H. ALSTON JOHNSON III, INSURANCE LAW & PRACTICE § 23, at 32-33 (15 LOUISIANA CIVIL LAW TREATISE 1986) (noting that <u>Lumbermen's Mutual</u> approved the view that "the statute created substantive rights which the federal court was bound to enforce").[8]

The legislature did not affect the plaintiff's substantive and remedial rights under the direct action statute in the 1988 amendment that added the italicized portion quoted at note 6, <u>supra</u>. The 1988 amendment merely added a procedural method by which the

---

[8] The foregoing cases appear to represent the prevailing view of jurists who have carefully considered the nature of the injured person's right against the tortfeasor's insurer under the direct action statute. In other cases, when the nature of the right was not at issue, courts have spoken of the right loosely as a "procedural right," a "cause of action," a "right of action," or in other imprecise terms. <u>See, e.g.</u>, <u>Dumas v. United States Fidelity & Guar. Co.</u>, 134 So. 2d 45, 52 (La. 1961); <u>Ruiz v. Clancy</u>, 162 So. 734, 738 (La. 1935). Lack of precision in the use of "right," "remedy," "action," and "procedure" is not uncommon. <u>See, e.g.</u>, YIANNOPOULOS, <u>supra</u>, at 473 ("Action is frequently defined as a recourse to justice in case of contestation or violation of a right, as well as an aspect of the right that the judge will recognize and protect. Thus, while distinction is made in principle between right and action, the two are frequently regarded as one and the same thing."); <u>see also</u> 1 DOBBS, <u>supra</u>, at 24-25 ("Lawyers use the word remedies in a host of different ways . . . . []that makes it difficult to know how a remedies question differs from a procedural or some other kind of question. . . . In a broad sense, almost any solution to any kind of problem can be regarded as a remedy.").

insurer can object to the non-joinder of the insured (other than in the exceptional circumstances listed), which operates as an exception to the principle of Louisiana Code of Civil Procedure article 643, which provides that the injured plaintiff, as a solidary obligee, may enforce his claim against either the insurer or the insured, as a solidary obligor, or together, at the plaintiff's option. The legislature's intention to preserve the injured person's substantive right and remedial action against the tortfeasor's insurer is clear. By continuing the 1930 substantive-remedial provision verbatim and intact when it added the joinder provision in 1988, the legislature obviously did not intend to abrogate the right and remedy which had been enforced for seventy-one years; instead it meant simply to add a procedural rule of joinder to accompany the pre-existing right and remedy. If the legislature had intended to drastically limit or hamper the substantive rights and remedial actions under Louisiana's venerable and unique direct action statute, surely it would have said so in explicit, clear, and unambiguous terms. For this reason, and to give meaning to every provision of the whole direct action statute, as amended, we conclude that the statute must now be read as establishing a substantive right, a remedial action, and a joinder procedure.[9]

---

[9] In the present case, we need not decide to what extent, if any, the procedural joinder rule added by the 1988 amendment should be read in pari materia with Louisiana's general provisions for joinder of parties, specifically Louisiana Code of Civil Procedure

In this case, First Financial's motion for JMOL was not based on a procedural objection to non-joinder but on its misconception that the injured plaintiff's right, remedy, and judgment against the insurer are substantively dependent upon joinder of the insureds. Even if the motion for JMOL could be construed as a procedural objection to non-joinder of an insured, however, the district court's denial was not an abuse of discretion because the motion came so late in the litigation-at the conclusion of all the evidence in the case, two years after the filing of the initial complaint—that granting it would have prejudiced the parties present with undue delay; the district court did not err or abuse its discretion because its denial of the motion will not result in First Financial incurring multiple or inconsistent obligations, or in Ming Chun being subjected to liability for which it had no opportunity to defend itself. See Pulitzer-Polster v. Pulitzer, 784 F.2d 1305, 1309 (5th Cir. 1986); Schutten v. Shell Oil Co., 421 F.2d 869, 873-74 (5th Cir. 1970); 7 WRIGHT § 1688.1, at 510-512.

As we have suggested above, the judgment against First Financial was based only on the delictual right which McAvey had against First Financial's insured, Ming Chun, not on any delictual

---

articles 641-643. Articles 641 and 642, which mirror the provisions of Federal Rule of Civil Procedure 19, require a court to determine via a "close factual analysis" of the interests involved whether an absent party should be joined, and whether the action should proceed if the party cannot be joined. See State Department of Highways v. Lamar Advertising Co. of La., Inc., 279 So. 2d 671, 677 (La. 1973).

right which McAvey had against either Mr. or Mrs. Lee, who were also First Financial's insureds. First Financial's challenge to the service on Ming Chun plainly came too late and was hence waived. FED. R. CIV. P. 12.

Consequently, we conclude that in the present case McAvey's right, remedy, and judgment against First Financial was not affected by the directed verdict dismissing Mr. and Mrs. Lee or the failure to serve Ming Chun properly.[10]

C.

First Financial next argues that the district court erred when it ruled in limine that the jury would not be instructed, or requested in response to an interrogatory, to assign a percentage of fault to the unidentified criminal intruders who intentionally attacked and robbed McAvey.

"The district court's instructions to the jury and special interrogatories are reviewed for abuse of discretion." EEOC v.

---

[10] Because we conclude that the Louisiana Supreme Court would hold that the 1988 amendment to the direct action statute is a procedural joinder requirement, and that First Financial's motion for JMOL either did not object to the non-joinder of an insured or did not file its objection promptly so as to avoid unfair delay and prejudice to other parties, we expressly do not reach the issue of whether the statute's requirement that the action be "brought against" the insureds in this case was satisfied by the commencement of the action against them, see LA. CODE CIV. PROC. art. 421, FED. R. CIV. P. 3, or also requires the perfection of service of process against all of the insureds.

27

Manville Sales Corp., 27 F.3d 1089, 1096 (5th Cir. 1994). "[S]o long as the jury is not misled, prejudiced, or confused, and the charge is comprehensive and fundamentally accurate, it will be deemed adequate and without reversible error." Davis v. Avondale Indus., Inc., 975 F.2d 169, 173-74 (5th Cir. 1992).

The district court instructed the jury to answer the following interrogatory on comparative fault:

> IV. What percentage of fault do you place on each of the parties? (You will not be asked to assign a percentage of fault to the intruders. The percentage of fault between the innkeeper and the plaintiff must equal 100%.)
>
> The Innkeeper _____%
>
> Mr. McAvey _____%

The jury assigned eighty percent of the fault to "The Innkeeper" and twenty percent to McAvey. First Financial contends that the jury should have been instructed to assign fault to the unidentified criminal intruders, and that if the jury had done so McAvey's recovery from First Financial would have been reduced substantially.

On November 6, 1995, when McAvey's rights under delictual law and the direct action statute accrued and became vested against First Financial and its insured tortfeasors, neither Louisiana Civil Code article 1212 nor Louisiana Code of Civil Procedure article

28

1812(C), or any other pertinent Lousisiana law, required a trial court to cause a diminution of McAvey's full recovery for his injuries by instructing a jury to assign percentages of fault to unidentified non-party intentional criminal tortfeasors. See Cavalier v. Cain's Hydrostatic Testing, Inc., 657 So. 2d 975 (La. 1995) ("[S]ince the Legislature did not specify which non-parties should have their fault quantified by the jury, the appropriateness, and indeed the necessity, of quantifying the fault of a particular non-party as a substantive requirement of the overall statutory scheme of comparative fault is inherently a question to be decided by the courts."); Veazey v. Elmwood Plantation Assocs., Ltd., 650 So. 2d 712, 719, 720 (La. 1994)("Louisiana law is broad enough to allow comparison of fault between intentional tortfeasors and negligent tortfeasors, [but] [] whether such a comparison should be made must be determined by the trial court on a case by case basis, bearing in mind the public policy concerns discussed herein[, viz.,][a]s a general rule, [] negligent tortfeasors should not be allowed to reduce their fault by the intentional fault of another that they had a duty to prevent[;] [a negligent tortfeasor] should not be allowed to benefit at the innocent plaintiff's expense by an allocation of fault to the intentional tortfeasor under comparative fault principles[;][b]ecause [] intentional torts are of a fundamentally different nature than negligent torts, [] a true comparison of fault based on an intentional act and fault based on negligence is, in many circumstances, not possible.")(emphasis and

29

footnotes omitted).

First Financial argues, however, that the 1996 amendments to Louisiana Civil Code article 2323 and Louisiana Code of Civil Procedure article 1812 retroactively required the district court to give the jury instructions to quantify the fault of the unidentified non-party criminal intentional tortfeasors and thereby reduce McAvey's recovery from First Financial by a percentage of fault assigned to the criminals. We need not decide whether First Financial's interpretation of the meaning of these articles, as amended, is correct because we conclude that the Louisiana Supreme Court would not permit the retroactive application of those laws, and therefore would not regard the district court's refusal to give the instruction requested by First Financial as harmful or reversible error.[11] Assuming, without deciding, that quantification of fault and reduction of recovery is now required by the 1996 legislation, we are satisfied that the Supreme Court of Louisiana would not permit or require those laws to be applied retroactively to reduce McAvey's recovery in the present case. Therefore, the district court did not abuse its discretion and thus did not err reversibly in its in limine ruling that the jury would not be given

---

[11] See Aucoin v. State DOTD, 712 So. 2d 62, 67 (La. 1998) ("[S]ince the amendment resulted in changing the amount of damages recoverable, the change was clearly substantive. . . . As such, the amendment can have only prospective application.") (citing Socorro v. City of New Orleans, 579 So. 2d 931, 944 (La. 1991)); see also Bourgeois v. A.P. Green Indus., Inc., 783 So. 2d 1251, 1256-58 (La. 2001).

such instructions.

III.

First Financial presents a number of other arguments that are without reversible merit. We will dispose of the issues raised by these arguments without extended discussion.

First Financial argues that the jury erred in finding the innkeeper liable, and, alternatively, that it erred in apportioning eighty percent of the fault to the innkeeper. McAvey presented evidence from which the jury reasonably could have found that the only access to the motel's guest rooms was through a lobby occupied by a single desk clerk; the desk clerk was the only employee on duty on the night the unidentified intruders robbed McAvey in his room; although the innkeeper had found it necessary to employ security guards occasionally in the past, there was no security guard on duty at the motel because Ming Chun had decided to dispense with that security measure on week nights; McAvey and the other guests were not informed there was no security guard on duty (otherwise, McAvey might not have been tricked into opening his door by the robber who identified himself as "security"); the single desk clerk could not adequately deter or prevent the entry of dangerous intruders because he was unarmed, had been instructed to not protect or defend guests who were being attacked or abused but to simply call the police, and could not maintain an adequate lookout for unauthorized intruders

because he was required to deal with customers, patrol the premises, and take restroom breaks during the period when he was the sole watchman and guardian of the motel; the only security monitor on the premises changed perspective every five to ten seconds, rather than displaying a constant surveillance of the guestroom corridors and the entryways. Either First Financial or a previous insurer had required the erection of a barbed-wire-topped fence around all or a part of the motel property, indicating that the surrounding area was not safe. The defendants produced no evidence or testimony regarding whether its security measures and staffing levels were adequate, other than Mr. Lee's own conclusory insistence that he had been a trained police officer in Taiwan and that he felt the Tomfort Lodge was adequately secured.

We have long recognized that, under Louisiana law, although the innkeeper is not the insurer of his guests against injury or loss due to violent crime, "'[t]he innkeeper's position vis-a-vis his guests is similar to that of a common carrier toward its passengers. Thus, a guest is entitled to a high degree of care and protection. The innkeeper has a duty to take reasonable precautions against criminals.'" Banks v. Hyatt Corp., 722 F.2d 214, 220 (5th Cir. 1984) (quoting Kraaz v. La Quinta Motor Inns, Inc., 410 So. 2d 1048, 1053 (La. 1982). This duty is "a more demanding duty of care than that required of other businesses." Id. at 220 n.5. In enforcing this duty, we have found it proper for a jury to find an innkeeper liable when the innkeeper was aware of the risk of

32

criminal assault on its guests but took inadequate safety precautions. Id. at 226. The parties here do not dispute that this is the precedent by which we are bound. Applying this law to the evidence presented at trial, we believe that reasonable jurors could have found the innkeeper negligent. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2109 (2000).

Nor can we find in the record such overwhelming evidence or testimony regarding McAvey's fault as to overcome the deference we must show the jury's apportionment of eighty percent of the fault to the innkeepers. See Douglas v. DynMcDermott Petroleum Operations Co., 144 F.3d 364, 369 (5th Cir. 1998) ("We will not disturb the jury's verdict unless, considering the evidence in the light most favorable to [McAvey], the facts and inferences point so overwhelmingly to [the innkeepers] that reasonable jurors could not have arrived at a verdict except in [their] favor.").

First Financial also argues that the quantum of damages awarded to McAvey was excessive. However, where, as here, there was testimony presented by both parties as to the amount of McAvey's future wages and the amount of damages incurred in repairing his heel fracture, our review of the record reveals that the jury was not clearly in error in determining the amount of total damages to be awarded to McAvey. See Pendarvis v. Ormet Corp., 135 F.3d 1036, 1038 (5th Cir. 1998) (holding that the issue of the amount of the damages awarded by the jury is reviewed for clear error).

Finally, First Financial argues that McAvey's prior criminal record should have been admitted into evidence to support its hypothesis that McAvey was actually injured by drug dealers he might have invited up to his hotel room. However, First Financial offered no evidence that tended to show that McAvey had invited anyone to his room or that he had engaged in any drug activity that night. Because the admission of McAvey's prior criminal record would have been for a purely speculative, rather than probative, purpose, and would have had a comparatively high prejudicial effect, FED. R. EVID. 403, we find that the district court did not abuse its discretion in deciding not to admit the criminal records. See United States v. Townsend, 31 F.3d 262, 268 (5th Cir. 1994) ("This Court will reverse a decision of the trial court in excluding or admitting evidence only upon a showing that the trial court abused its discretion in weighing the probative value of the evidence against its prejudicial effect.").

For the reasons assigned, the judgment of the District Court is AFFIRMED.