765 So.2d 1224 (2000)
William Dale WALKER, et al., Plaintiffs-appellants,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, et al., Defendants-appellees.
No. 33,781-CA.
Court of Appeal of Louisiana, Second Circuit.
August 25, 2000.
*1225 Tyler & Johnson by Tommy J. Johnson, Shreveport, Counsel for Appellants.
Deal & Cook by Philip T. Deal, Monroe, Counsel for Appellees, Susan Walker and State Farm Mutual Automobile Insurance Company.
Corkern & Crews by Ronald E. Corkern, Jr., Natchitochches, Counsel for Appellee, State Farm Fire & Casualty Company.
Before STEWART, CARAWAY and PEATROSS, JJ.
CARAWAY, J.
Following an automobile accident in which their father was killed in a vehicle driven by their mother, the minor children instituted this wrongful death and survival action against the family's insurers and their mother. The suit was filed by the children's uncle, who was appointed provisional tutor, and was met with an exception of no right of action on behalf of the mother. Recognizing the application of Louisiana's parent-child immunity statute, the trial court granted the exception and dismissed the suit by the children against their mother. We affirm.

Facts and Procedural History
On July 17, 1998, a tragic automobile accident occurred when the family van being driven by Susan Walker ("Susan") collided with the rear of a tractor-trailer rig *1226 on Interstate 20 in Warren County, Mississippi. Susan's husband, Frank M. Walker, Jr., and her daughter, Nina Walker, were killed in the accident. Susan and her son, Slade Walker ("Slade"), were also injured in the crash.
This suit was filed by William Dale Walker, as the court appointed tutor for Susan's minor children, Carmen Elizabeth Walker ("Carmen") and Slade, and by Frank's adult children from a prior marriage, Meredith Ashley Walker and Brooke Katherine Walker. Named as defendants were Susan Walker and her two liability insurers, State Farm Fire and Casualty Company of Monroe and State Farm Mutual Automobile Insurance Company of Bloomington, Illinois. Carmen and Slade assert a wrongful death and survival action against Susan for the death of their father. Additionally, Slade asserts a tort claim against his mother for his personal injuries. These claims, which are the subject of this appeal,[1] were dismissed by the trial court on Susan's exception of no right of action pursuant to Louisiana's procedural bar prohibiting actions by unemancipated minor children against their parents, La. R.S. 9:571 (hereinafter the "Statute"). The minor children now challenge the application of the Statute to the facts of this case, and alternatively, they challenge the constitutionality of the Statute as a bar to their claims.

Exception of No Right of Action
The Louisiana jurisprudence has considered the application of immunity statutes through the exception of no right of action. See, Myhre v. Erler, 575 So.2d 519 (La.App. 5th Cir.1991) ("It is well settled that the interspousal immunity created by this statute does not destroy any cause of action which one spouse may have against the other. The effect of this statute is to bar the right of action which one spouse has against the other for any such cause of action."); Gremillion v. Caffey, 71 So.2d 670 (La.App. 1st Cir.1954); Smith v. Southern Farm Bureau Cas. Ins. Co., 174 So.2d 122, 247 La. 695 (1965).
The exception of no right of action challenges whether the plaintiff has an actual interest in bringing the action. La. C.C.P. art. 927(A)(5); Grocery Supply Co. v. Winterton Food Stores, 31,114 (La. App.2d Cir.12/9/98), 722 So.2d 94, 98. Whether a plaintiff has a right of action depends on whether the plaintiff belongs to a particular class of persons to whom the law grants a remedy for the alleged grievance, or whether the plaintiff has an interest in judicially enforcing the right asserted.
Unlike the trial of an exception of no cause of action, evidence is admissible on the trial of an exception of no right of action to "support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition." La. C.C.P. art. 931; Morton v. Washington Nat. Ins. Co., 420 So.2d 1019 (La.App. 5th Cir.1982); North Cent. Utilities, Inc. v. East Columbia Water Dist., 449 So.2d 1186 (La.App. 2d Cir.1984).

Application of Parent-Child Immunity
The Statute (La. R.S. 9:571) provides as follows:
§ 571. General rule that child may not sue parent
The child who is not emancipated cannot sue:
(1) Either parent during the continuance of their marriage, when the parents are not judicially separated; or
(2) The parent who is entitled to his custody and control, when the marriage of the parents is dissolved, or the parents are judicially separated.
*1227 Our supreme court has ruled that the Statute operates only as a procedural bar to an action by a child against his parent and does not destroy the cause of action. Walker v. Milton, 268 So.2d 654, 263 La. 555 (1972).
The parent-child immunity Statute was enacted in 1960 as a revision of the similar immunity provided by former Article 104 of the Code of Practice of 1870. However, even before Article 104 of the Code of Practice was adopted, suits by children against their parents were deplored and discouraged, though not forbidden. See Ruiz v. Clancy, 162 So. 734, 182 La. 935 (1935). The reason why such suits were deemed objectionable was explained in the early decision of Bird v. Black, 5 La. Ann. 189, 196 (La.1850):
"The decisions of this court have not encouraged suits of children against their parents, unless to redress clear and palpable injustice. There are services which parents render to their children, and which it is presumed they performed until the contrary appears, which money cannot buy; and filial duty should restrain the child from exposing the faults of its parents, or worrying them with litigation, unless compelled by extreme necessity."
Furthermore, the court in Ruiz, supra, quoted from a New Hampshire ruling which summarized the purpose of the immunity, as follows:
"Such immunity as the parent may have from suit by the minor child for personal tort arises from a disability to sue, and not from lack of violated duty. This disability is not absolute. It is imposed for the protection of family control and harmony, and exists only where a suit or the prospect of a suit might disturb the family relations. Stated from the viewpoint of the parent, it is a privilege, but only a qualified one."
Two filial duties significant for an understanding of the immunity provided by the Statute are set forth in the Civil Code, as follows:
Art. 218. Parental custody and correction.
An unemancipated minor can not quit the parental house without the permission of his father and mother, who have the right to correct him, provided it be done in a reasonable manner.
Art. 227. Parental support and education of children.
Fathers and mothers, by the very act of marrying, contract together the obligation of supporting, maintaining, and educating their children.
The filial obligation of the parent under Article 227 to monetarily maintain and support the child adequately compensates for the procedural bar of the pursuit of tort damages during the child's minority.
The record indicates that Susan testified and evidence was received at the hearing on Susan's exception of no right of action. The appointment of William Dale Walker as provisional tutor was proven by the introduction of the tutor's letters without any further documentation from the tutorship proceeding. Although the transcript of the testimony is not in the record, the trial court ruled that Susan is "entitled to custody and control of her two minor children." Additionally, statements in the briefs of both parties indicate that the children remain in the actual custody of Susan, as would be expected under the provisions for natural tutorship. La. C.C. arts. 250[2] and 301.[3]
Under these circumstances and in view of Susan's obligations as parent and natural tutor, the appointment of William Dale Walker as the provisional tutor is governed by La. C.C.P. art. 4069(A), which provides as follows:

*1228 In exceptional cases and for good cause shown, the court may appoint a bank or another person as administrator or tutor of the property of the minor. This appointment may be made upon the court's own motion or upon the motion of the tutor or other person entitled to the tutorship if no tutor has been previously appointed, or upon motion of any interested person after a contradictory hearing with the tutor, administrator, or person entitled to the tutorship or the administration.
As noted in the comments to Article 4069, the appointment of a separate tutor of the minor's property "does not, however, take the care and custody of the minor from the person entitled to it by law." 1998 Revision Comments (a), La. C.C.P. art. 4069. Revision Comment (c) to the article further states:
All articles in this Title dealing with the care of the minor's person apply to the custodian of the person; whereas those dealing with the administration of property apply to the tutor of the property.
Therefore, while William Dale Walker acts as a prudent administrator and must "enforce all obligations of the minor" in accordance with La. C.C.P. art. 4262, Susan "shall have custody of and shall care for the person of the minor" as provided in La. C.C.P. 4261 and in accordance with the filial duties of La. C.C. arts. 218 and 227, supra.
From the above review of the Statute, the substantive and procedural law regarding tutorship, and facts of this case, we conclude that, within the language of the Statute, Susan is "the parent who is entitled to ... custody and control" of Carmen and Slade and thus immune from suit during the children's minority. This ruling is in keeping with the long recognized purpose of the Statute to promote family harmony and to maintain the family control.
Finally, since any suit by an unemancipated minor requires a legal representative to act on the minor's behalf, the immunity of the Statute operates against that legal representative regardless of the circumstances of his appointment. La. C.C.P. arts 683 and 5251(10). William Dale Walker's appointment as provisional tutor of the property of Carmen and Slade therefore does not prevent the grant of immunity provided Susan by the Statute.

Constitutionality of the Statute
In response to the exception of no right of action and before the hearing, plaintiffs amended the petition, seeking to declare the Statute unconstitutional and to serve notice of the suit on the State of Louisiana pursuant to La. C.C.P. art. 1880. Although the trial court did not specifically address the tutor's arguments regarding the constitutionality of the Statute, its application of the Statute evidences a rejection of the claim, and William Dale Walker now renews the constitutional challenge.
Appellants challenge La. R.S. 9:571 based on La. Const. Art. I, § 3, which reads:
"No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited except in the latter case as punishment for a crime."
Article I, § 3 requires the courts to apply different types of equal protection analyses to different types of legislative classifications of individuals. At a minimum, every statutory classification of individuals must be rationally related to a legitimate governmental purpose. Consequently, whenever a person disadvantaged by such a statutory classification shows that it does not suitably further any appropriate state interest, the courts must decline to enforce that classification. At the other extreme, when a law classifies persons by race or religious ideas, beliefs, or affiliations, it must be repudiated completely. Sibley v. Board of Supervisors of *1229 Louisiana State University, 477 So.2d 1094 (La.1985) (on rehearing). Article I, § 3 further designates certain types of legislative classifications that cannot be used to arbitrarily, capriciously, or unreasonably discriminate against a person. When a statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, the statute is presumptively unconstitutional unless the state or proponents of the statute prove this legislative classification "substantially furthers an appropriate state purpose." Id. at 1108. Although age discrimination was not at issue in Sibley, the Sibley analysis was applied to determine the constitutionality of Louisiana's law raising the minimum drinking age to 21 years of age in Manuel v. State, 95-2189 (La.3/8/96), 692 So.2d 320 (on rehearing).
At first glance, the challenged Statute obviously classifies persons on the basis of age by prohibiting unemancipated minors from suing their parents, while adult children are not similarly barred. At the time that the 1974 Louisiana Constitution first listed equal protection against arbitrary discrimination based on age, the Statute was part of the large framework of laws establishing the line of demarcation between the "rights, duties, responsibilities and capacities" of adults and those of minors. See, former Article 37 of Civil Code (1870), defining the age of majority, now La. C.C. art. 29. Indeed, other articles of the 1974 Constitution listed the age of eighteen as the time when adult privileges under the Constitution are conferred. See, Art. I, § 10 (right to vote) and Art. III, § 3 (right to serve in legislature), La. Const.1974. As shown above, the Statute's parent-child immunity is interrelated with the filial obligations existing in the family and the parent's role as natural tutor. Additionally, an important provision of our laws concerning minority and the parent-child relationship is La. C.C. art. 3469 which suspends the running of prescription between parents and children during minority.
Given the necessity in a legal system of distinguishing adults from minors on the basis of age and the existence of the Statute as a part of our framework of family laws at the time of the adoption of the 1974 Constitution, we doubt that the provision regarding equal protection and age discrimination was intended to make Louisiana's many laws regulating minority presumptively unconstitutional. Professor Hargrave noted in his 1974 review of the constitutional convention that "[a]ge discrimination will need to be tempered with the conception, supported by the debate, that the young and the old can be given preferential treatment." Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 9 (1974). In Louisiana cases addressing age discrimination since 1974, the challenged, age-related laws have either singled out a particular age group of adults for different treatment from other adults or distinguished between one group of minors from another group of minors below a certain age. State v. Leach, 425 So.2d 1232 (La. 1983); Manuel v. State, supra; Pierce v. LaFourche Parish Council, 99-2854 (La.5/16/00), 762 So.2d 608 (where the supreme court held unconstitutional a workers' compensation benefit provision that caused disparate treatment of injured employees 62 years of age or older.); State v. Ferris, 98-2442 (La.5/16/00), 762 So.2d 601 (holding constitutional the underage DUI statute applicable to drivers under 21 years old.)
Nevertheless, assuming that the Statute's regulation of the rights of minors is a suspect classification based upon age within the intent of the third sentence of La. Const. art. I, § 3, we find that the legislative classification substantially furthers an appropriate state purpose for the harmony and control of the family unit. The Statute is not arbitrary, capricious or unreasonable when considered in relation with other laws regulating the family which provide for the minor's care, support and protection by the parent(s). Since the *1230 minor's cause of action against the parent is not impacted by the Statute or by our law of prescription, and since the child is incapable of managing his legal relations, except through the parent or other legal representative, the Statute merely defers the child's exercise of his rights until adulthood, while preventing any outside representative from making decisions disruptive to the family unit. Accordingly, we find that the Statute does not offend La. Const. art. I, § 3 and uphold its constitutionality.

Conclusion
The trial court's grant of the exception of no right of action applying the parent-child immunity of the Statute and dismissing the suit by the tutor, William Dale Walker, against Susan S. Walker is affirmed. Costs are assessed to appellant.
AFFIRMED.
NOTES
[1] In addition to the exception which is the subject of this appeal, the trial court granted an additional exception of no cause of action in favor of Susan and State Farm Mutual dismissing all plaintiffs' wrongful death and survival action claims for the death of Nina. That ruling was not appealed. Carmen's and Slade's claims for the death of their father against the two insurers remain pending.
[2] La. C.C. art. 250 provides in pertinent part: "Upon the death of either parent, the tutorship of minor children belongs of right to the other."
[3] La. C.C. art. 301 provides: "The causes herein expressed, or any other, cannot excuse a parent from the obligation of accepting the tutorship of his children."