897 So.2d 1 (2004)
Laura COX, Individually and on Behalf of her Minor Child, Olivia Cox
v.
GAYLORD CONTAINER CORPORATION.
No. 2003 CA 0692.
Court of Appeal of Louisiana, First Circuit.
February 23, 2004.
Opinion On Rehearing February 16, 2005.
*2 Richard W. Watts, Franklinton, Allen Harvey, Michael D. Bass, T. Jay Seale, Hammond, Counsel for Plaintiff/Appellant Laura Cox, individually and on behalf of minor child, Olivia Cox.
Richard W. Watts, Franklinton, Allen Harvey, Andrew M. Edwards, II, T. Jay Seale, Hammond, Counsel for Plaintiff/Appellant Laura Cox, individually and on behalf of minor child, Olivia Cox (opinion on rehearing).
Craig J. Robichaux, Mandeville, Counsel for Defendant/Appellee Gaylord Container Corporation.
Before: PETTIGREW, DOWNING and McCLENDON, JJ. CARTER, WHIPPLE, PARRO, KUHN, GUIDRY, PETTIGREW, DOWNING, GAIDRY, McDONALD, McCLENDON, and WELCH, JJ.
Opinion On Rehearing En Banc February 16, 2005.
DOWNING, J.
Laura Cox, individually and on behalf of her child, Olivia Cox, appeals a judgment ruling that her employer was not vicariously liable for her negligence that resulted in an on-the-job injury to her unborn child. The judgment also decreed that the child had no theory of recovery for prenatal injuries she allegedly sustained from the negligent acts of her mother. For the following reasons, we vacate in part, amend in part, and affirm as amended.

FACTS AND PROCEDURAL HISTORY
On November 3, 1998, Laura Cox, a pregnant employee of Gaylord Container Corporation (Gaylord), sustained injuries on the job when she ran the forklift she was driving into a steel I-beam. At the time of the accident, Laura was taken to the hospital, examined in the emergency room, and released the same day. She had abdominal bruising, but there was no vaginal bleeding and the fetal heartbeat appeared to be normal. Laura gave birth to Olivia Cox on March 2, 1999, four months after the accident occurred. Olivia was born with cerebral palsy.
Laura filed suit on Olivia's behalf against Gaylord alleging that Olivia's neurological damage was a result of the accident. In cross-motions for summary judgment, the trial court granted a partial summary judgment dismissing plaintiff's claims against Gaylord as they relate to the issue and/or theory of recovery that Olivia Cox may recover against either Laura Cox and/or Gaylord (vicariously for the negligence of Laura Cox) for any prenatal negligence which allegedly resulted in injury to Olivia Cox in utero.
Plaintiffs appealed alleging that the trial court erred in the following:
1. In concluding that a fetus, later born alive, does not possess a cause of action against its mother for negligently inflicted prenatal injuries.
2. In considering and applying common law legal authorities to the case instead of considering an applying clearly established civilian legal authorities and principles.
3. In applying the duty/risk analysis to the employer in the case sub judice; because respondeat superior recovery *3 is based on the negligence of an employee, and the duty/risk analysis must be applied to that employee, not to the employer.

PARENTAL LIABILITY
Plaintiffs' first assignment of error alleges that the trial court erred in concluding that Olivia has no theory of recovery against her mother for her negligently inflicted prenatal injuries.
As a general rule, an unemancipated child cannot sue the parent who is entitled to his or her custody and control. La.R.S. 9:571. This statute operates only as a procedural bar to an action by the child against his parent and does not destroy the cause of action. See Walker v. Milton, 263 La. 555, 560-61, 268 So.2d 654, 655-56 (1972). Thus, it is foreseeable that when this child becomes of age or is emancipated, she could bring a claim against a parent. See Tort Actions Among Family Members, Loyola Law Review Volume 1 1941-48 and 1 A.L.R.3d 677 (1965).
The judgment at issue not only dismissed the claims against Gaylord, it also dismissed plaintiff's claims as they relate to the issues and/or theories of recovery that Olivia Cox may have against Laura Cox for any prenatal negligence of Laura Cox that allegedly resulted in injury to Olivia Cox in utero. Whether Olivia Cox can at some point in her life sue her mother, Laura Cox, for negligently injuring her before birth, was not before the court in Gaylord's motion for summary judgment, and should not have been heard. Furthermore, the holding is not supported by the law or the evidence. While a parent may file the exception of no right of action in this circumstance, Walker v. State Farm, 33,781, p. 2 (La.App. 2 Cir. 8/25/00), 765 So.2d 1224, 1226, and while we are of the opinion that the matter could also be raised by an exception of prematurity since the procedural bar simply defers the right of action. We can find no law that dispossesses a child of a cause of action. Louisiana Revised Statute 9:571 merely defers the cause of action until the child reaches majority or is emancipated.
This assignment of error has merit. Accordingly, we vacate that portion of the judgment that dismisses Laura Cox from the negligent acts she allegedly inflicted that resulted in damage to her unborn child, Olivia Cox and amend the judgment accordingly.

EMPLOYER'S LIABILITY
Plaintiffs allege in their third assignment of error that the trial court erred in finding that Gaylord was not vicariously liable for the negligent acts of Laura Cox that caused damage to her unborn child and erred in applying the duty/risk analysis to the employer and not to the employee.
Louisiana Civil Code article 2320 provides in part:
[E]mployers are answerable for the damage occasioned by their servants ... in the exercise of the functions in which they are employed. [R]esponsibility only attaches, when ... employers ... might have prevented the act which caused the damage, and have not done it.
This article makes it clear that employers are vicariously liable for the damage its employees cause in the exercise of the functions in which they are employed, even if the injury is to the employee's child. And as discussed above, the parental immunity found in La.R.S. 9:571 only operates as a procedural bar to an action by the child against the parent and does not destroy the cause of action. Walker v. Milton, 263 La. at 560-61, 268 So.2d at 655-56.
*4 The Code article explains the exceptions to the general rule imposing vicarious liability on employers. In several recent cases, application of this code article has been discussed. In Spears v. Roundtree Oldsmobile-Cadillac Co., 26,810, p. 5 (La.App. 2 Cir. 4/5/95), 653 So.2d 182, 184, the court concluded that under article 2320, damage could not be imputed to the employer because the employer had no actual or constructive knowledge of the conduct until after the incident occurred. Thus, the employer could not have prevented the act that caused the damage. In Alexander v. Lowes Companies, 96-2169, pp. 5-6 (La.App. 1 Cir. 9/19/97), 701 So.2d 239, 242, the court discussed when a principal is vicariously liable for a contractor's work. The court made it clear that "responsibility attaches only when the employer might have prevented the act that caused the damage, and did not do so." See also Gender Specific Regulations in the Chemical Workplace, 27 Santa Clara L.Rev. 353 (1987).
Pregnancy-based discrimination is not permissible. See Title VII of the Civil Rights Act of 1964.
In this case, Laura Cox was a union worker, and Gaylord is a Title VII employer. The Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (1978), provides that it is illegal discrimination to treat women differently because of pregnancy, childbirth or related medical conditions. The act specifically requires employers to treat pregnant women the same for "all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected."
Gaylord had no choice but to keep Laura working. There is no evidence Laura requested light duty or asked to be moved to another assignment and Gaylord could not require her to do so. Gaylord had no way to protect itself from Olivia being negligently injured on the job by her mother. Since responsibility only attaches when an employer might have prevented the act causing the damage, article 2320 prevents liability from attaching.
Accordingly, since Gaylord cannot be liable under article 2320 for the negligent acts of its employee in this situation, we pretermit this discussion of to whom the duty/risk analysis might apply. This assignment of error is without merit.

CIVILIAN VS. COMMON LAW PRINCIPLES OF LAW
Plaintiffs allege that the trial court erred by applying common law legal authorities to this case instead of considering civilian legal authorities. After a careful and thorough review of the extensive record, we conclude that nothing in the record indicates that the trial court used common law principles in deciding this case. This assignment of error is without merit.

DECREE
There are no disputed facts in this matter and Gaylord has established that it is entitled to partial summary judgment as a matter of law. Therefore summary judgment is appropriate. Taylor v. Rowell, 98-2865 p. 3, (La.5/18/99), 736 So.2d 812, 814. However, on this issue of a parent's potential liability to this child the trial court incorrectly ruled on a matter not before it.
For the above reasons, the summary judgment of the trial court dismissing plaintiff's claims against Gaylord Container Corporation is affirmed. The judgment is vacated in so far as it dismissed Olivia Cox's claim against her parent. As amended, the judgment is affirmed. Costs of this appeal are allocated equally between Laura Cox and Gaylord.
*5 VACATED IN PART AND AFFIRMED AS AMENDED.
PETTIGREW, J., concurs and assigns reasons.
PETTIGREW, J., concurring.
I agree with the majority that Olivia has a cause of action against her mother and that La. R.S. 9:571 only operates as a procedural bar to an action by the child against his parent and does not destroy the cause of action. I also agree that La. Civ.Code art. 2320 makes its clear that under the right circumstances, employers are vicariously liable for the damage their employees cause in the exercise of the function in which they are employed even if the injury is to an employee's unborn child if that child is later born live.
I would be inclined to reverse the trial court's dismissal of Gaylord from this action. However, because the plaintiff failed to submit evidence that her employer might have prevented the act that caused the damage, I am constrained to follow the majority. Therefore, I will respectfully concur.

ON REHEARING
DOWNING, J.
The merits of this case are before us on rehearing.[1] Laura Cox, individually and on behalf of her minor child, Olivia Cox, appeals a judgment ruling that her employer was not vicariously liable for her negligence that resulted in an alleged on-the-job injury to her unborn child. The judgment also decreed that the child had no theory of recovery for prenatal injuries she allegedly sustained from the negligent acts of her mother. For the following reasons, we vacate in part, amend in part, and affirm as amended.

FACTS AND PROCEDURAL HISTORY
On November 3, 1998, Laura Cox, a pregnant employee of Gaylord Container Corporation (Gaylord), sustained injuries on the job when she ran the forklift she was driving into a steel I-beam. At the time of the accident, Laura was taken to the hospital, examined in the emergency room, and released the same day. She had abdominal bruising, but there was no vaginal bleeding and the fetal heartbeat appeared to be normal. Laura gave birth to Olivia Cox on March 2, 1999, four months after the accident occurred. Olivia was born with cerebral palsy.
Laura filed suit on Olivia's behalf against Gaylord alleging that Olivia's neurological damage was a result of the accident. In cross-motions for summary judgment, the trial court granted a partial summary judgment dismissing plaintiff's claims against Gaylord as they relate to the issue and/or theory of recovery that Olivia may recover against either Laura and/or Gaylord (vicariously for the negligence of Laura) for any prenatal negligence which allegedly resulted in injury to Olivia in utero.
Plaintiff appealed, alleging that the trial court erred in the following:
1. In concluding that a fetus, later born alive, does not possess a cause of *6 action against its mother for negligently inflicted prenatal injuries.
2. In considering and applying common law legal authorities to the case instead of considering and applying clearly established civilian legal authorities and principles.
3. In applying the duty/risk analysis to the employer in the case sub judice; because respondeat superior recovery is based on the negligence of an employee, and the duty/risk analysis must be applied to that employee, not to the employer.

PARENTAL LIABILITY
The Plaintiff's first assignment of error alleges that the trial court erred in concluding that Olivia has no theory of recovery against her mother for her negligently inflicted prenatal injuries.
As a general rule, an unemancipated child cannot sue the parent who is entitled to his or her custody and control. La. R.S. 9:571. This statute operates only as a procedural bar to an action by the child against his parent and does not destroy the cause of action. See Walker v. Milton, 263 La. 555, 560-61, 268 So.2d 654, 655-56 (1972). Thus, it is possible that when this child becomes of age or is emancipated, she could bring a claim against her parent. See Recent Cases, 1 Loyola Law Review, 96, 100-01 (1941-42) and 1 A.L.R.3d 677 (1965).
The judgment at issue not only dismissed the claims against Gaylord, it also dismissed plaintiff's claims as they relate to the issues and/or theories of recovery that Olivia may have against Laura for any prenatal negligence of Laura that allegedly resulted in injury to Olivia in utero. Whether Olivia can at some point in her life sue her mother, Laura, for negligently injuring her before birth, was not before the court in Gaylord's motion for summary judgment, and should not have been heard. We specifically do not here address the merits of whether a child in utero might at some point have a cause of action against its mother for negligent injuring. Accordingly, we vacate that portion of the judgment that dismisses Olivia's cause of action against her mother, Laura, for her alleged prenatal injuries. We amend the judgment accordingly.

EMPLOYER'S LIABILITY
The Plaintiff also argues in her third assignment of error that the trial court erred in finding that Gaylord was not vicariously liable for the negligent acts of Laura that caused damage to her unborn child and erred in applying the duty/risk analysis to the employer and not to the employee.
Louisiana Civil Code article 2320 provides in part:
[E]mployers are answerable for the damage occasioned by their servants ... in the exercise of the functions in which they are employed.
....
[R]esponsibility only attaches, when ... employers ... might have prevented the act which caused the damage, and have not done it.
This article makes it clear that, generally, employers are vicariously liable for the damage their employees cause in the exercise of the functions in which they are employed, even if the injury is to an employee's child.
The code article, however, also sets forth the exception to the general rule imposing vicarious liability on employers. Application of this code article has been discussed in several cases. In Spears v. Rountree Oldsmobile-Cadillac Co., 26,810, p. 5 (La.App. 2 Cir. 4/5/95), 653 So.2d 182, 184, the court discussed Article 2320 and whether *7 damage could be imputed to the employer because the employer had no actual or constructive knowledge of the conduct until after the incident occurred. In Alexander v. Lowes Companies, 96-2169, pp. 5-6 (La.App. 1 Cir. 9/19/97), 701 So.2d 239, 242, the court discussed when a principal is vicariously liable for a contractor's work. The court made it clear that "responsibility attaches only when the employer might have prevented the act that caused the damage, and did not do so."
Pregnancy-based discrimination is not permissible. See Title VII of the Civil Rights Act of 1964. See also Gender Specific Regulations in the Chemical Workplace, 27 Santa Clara L.Rev. 353 (1987).
In this case, Laura was a union worker, and Gaylord is a Title VII employer. The Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (1978), provides that it is illegal discrimination to treat women differently because of pregnancy, childbirth or related medical conditions. The act specifically requires employers to treat pregnant women the same for "all employment-related purposes, ..., as other persons not so affected." Gaylord had no choice but to keep Laura working. There is no evidence Laura requested light duty or asked to be moved to another assignment, and Gaylord could not have required her to do so. There was also no evidence of prior negligent acts on Laura's part or any evidence of any predisposition to conduct her work in a negligent manner. Gaylord had no way to protect itself from Olivia's being negligently injured prenatally by her mother while her mother was on the job.
We are aware of the general discussion addressing vicarious liability in Blanchard v. Ogima, 253 La. 34, 43-44, 215 So.2d 902, 905 (1968). The Louisiana Supreme Court remarked that the codal language at issue has not been interpreted literally. It further commented that, "by inquiring into the overall relationship of the parties and the element of control, our jurisprudence has established reasonable definitions and limitations of vicarious liability to replace the literal codal restriction which has fallen into desuetude." (Emphasis added.) We have reviewed every case cited in Blanchard and the cases and articles cited by the parties. We have also conducted an independent review of the jurisprudence under La. C.C. art. 2320 and can find no circumstance in which Louisiana courts have addressed a fact situation like the one before us where the employer would have violated federal law had it attempted to prevent the act which allegedly caused damage to Laura's child, Olivia. Nor have Louisiana courts specifically interpreted the language in La. C.C. art. 2320 in this context.[2] This codal language has no bearing on the holding in Blanchard.
We conclude not that the literal codal restriction has fallen into desuetude; rather, the specific language at issue had not been litigated in Louisiana for many decades when Blanchard was decided. And Louisiana courts have never addressed the *8 application of La. C.C. art. 2320's exculpatory clause under the fact situation where an employer would violate the law by attempting to prevent the act that allegedly caused damage to an employee's unborn child.
We buttress our analysis with the precept that desuetude is disfavored and is a last resort in statutory interpretation. See Hoag v. State ex rel. Kennedy, 01-1076, p. 14 (La.App. 1 Cir. 11/20/02) (en banc), 836 So.2d 207, 219, writ denied, 02-3199 (La.3/28/03), 840 So.2d 570, where this court stated:
Rendering a part, or the entirety, of a statute meaningless or unconstitutional is the last option available to a court when it interprets a statute under [the] jurisprudence.
In construing legislative enactments, we must assume that the Louisiana Legislature intended every word, phrase, and clause to have some meaning and that none was inserted by accident. Id.
While La. C.C. art. 2320 does impose strict liability on an employer for damages caused by an employee where the employer could have prevented the act that causes damage, there is no evidence or indication that the Louisiana legislature intended to extend strict liability to situations where an employer is powerless and without control to prevent acts causing damage. The plain language of La. C.C. art. 2320 contradicts such an interpretation.
Employing the applicable statutory interpretation principles, we conclude that under the facts of this case where the employer would violate federal law if it took measures to prevent the act that caused the damage, the employer is not liable under La. C.C. art. 2320. The third assignment of error is without merit.
Accordingly, since Gaylord cannot be liable under Article 2320 for the negligent acts of its employee in this situation, we pretermit Laura's third assignment of error and the requested analysis concerning to whom the duty/risk analysis might apply.

CIVILIAN VS. COMMON LAW PRINCIPLES OF LAW
The Plaintiff alleges that the trial court erred by applying common law legal authorities to this case instead of considering civilian legal authorities. After a careful and thorough review of the extensive record, we conclude that nothing in the record indicates that the trial court used common law principles in deciding this case. The second assignment of error is without merit.

DECREE
There are no disputed facts in this matter and Gaylord has established that it is entitled to a partial summary judgment as a matter of law. Therefore summary judgment is appropriate. See Taylor v. Rowell, 98-2865, p. 3 (La.5/18/99), 736 So.2d 812, 814. However, on the issue of the mother's potential liability to her child for negligent infliction of prenatal injury, the trial court improperly ruled on a matter not before it.
For the above reasons, the summary judgment of the trial court dismissing plaintiff's claims against Gaylord Container Corporation is affirmed. The judgment is vacated insofar as it dismissed Olivia's claim against her mother. As amended, the judgment is affirmed. Costs of this appeal are allocated equally between Laura Cox and Gaylord.
VACATED IN PART, AMENDED IN PART, AND AFFIRMED AS AMENDED
*9 PETTIGREW, J., concurs in part and dissents in part and assigns reasons.
MCCLENDON, J., concurs.
DOWNING, J., specially concurs.
GUIDRY, J., concurs in part and dissents in part for the reasons assigned by Judge PETTIGREW and the additional reasons assigned by Judge WELCH.
MCDONALD, J., concurs for the reasons assigned by Judge KUHN.
KUHN, J., concurs and assigns written reasons.
GAIDRY, J., dissents for the reasons assigned by Judge PETTIGREW.
WELCH, J., concurs in part and dissents in part for reasons assigned by Judge PETTIGREW and assigns additional reasons.
PARRO, J., concurs.
KUHN, J., concurring.
I agree with the majority's affirmance of the judgment, dismissing Laura Cox's claims, individually and on behalf of her child, Olivia Cox, against Gaylord Container Corporation (Gaylord). But I do not agree the basis warranting dismissal of the claims is "that under the facts of this case where the employer would violate federal law if it took measures to prevent the act that caused the damage, the employer is not liable under La. C.C. art. 2320." Rather, I would affirm the trial court's dismissal of Cox's claims based on the conclusion that Olivia Cox does not have a cause of action against her mother for the damages she allegedly sustained in utero as a result of her mother's negligence. Because Olivia Cox lacks a legal remedy against her mother, Laura Cox cannot be liable to her daughter for the prenatal negligence, and Gaylord cannot be vicariously liable to Olivia Cox for the negligence of its employee under La. C.C. art. 2320.
Whether a duty exists is a question of law. Posecai v. Wal-Mart Stores, Inc., 99-1222, p. 4 (La.11/30/99), 752 So.2d 762, 766. In deciding whether to impose a duty in a particular case, the court must make a policy decision in light of the unique facts and circumstances presented. The court may consider various moral, social, and economic factors, including the fairness of imposing liability; the economic impact on the defendant and on similarly situated parties; the need for an incentive to prevent future harm; the nature of defendant's activity; the potential for an unmanageable flow of litigation; the historical development of precedent; and the direction in which society and its institutions are evolving. Id., 99-1222 at pp. 4-5, 752 So.2d at 766.
Although the Louisiana Supreme Court has recently recognized the right of a plaintiff to maintain an independent cause of action for prenatal injuries sustained as a result of the negligence of a third party, see Bailey v. Khoury, XXXX-XXXX (La.1/20/05), 891 So.2d 1268, there is nothing in our statutes or case law that addresses the right of a child to maintain a cause of action against his or her mother for negligent infliction of prenatal injuries.
To permit such a legal remedy would overlook the unique symbiotic relationship between the mother and her unborn child and would create a myriad of problems. Courts would be challenged to refine the scope of such a duty, including the degree of knowledge expected of a mother in order to pinpoint when such a duty would arise (e.g., at the point of pregnancy; at the point of awareness of pregnancy; or at the point of awareness that pregnancy is a possibility) or the particular standard of conduct to which a reasonably careful pregnant woman, in a single case, should *10 be held. (Could an infant sue the mother for having failed to take prenatal vitamins or not consuming a sufficient amount of milk during the gestation period?) Because of the unique relationship between a mother and her unborn child, and the fact that any and every action taken by a pregnant woman may have some effect on her child's growth and development, the existence of a risk created by the mother's conduct may never be clear.
I believe in light of the unique facts and circumstances presented, as a matter of policy, a child has no cause of action against the mother for damages arising from prenatal injuries sustained as a result of the mother's negligence. And since there is no resulting liability on the part of the mother, Laura Cox's employer, Gaylord, cannot be vicariously liable under La. C.C. art. 2320. Accordingly, I concur in the majority's dismissal of Cox's claims against Gaylord.
PETTIGREW, J., concurs in part, dissents in part, and assigns reasons.
PETTIGREW, J., concurring in part, and dissenting in part.
I agree with the majority that the trial court's judgment should be vacated insofar as it dismissed Olivia Cox's claim against her parent. See Bailey v. Khoury, XXXX-XXXX, XXXX-XXXX, and XXXX-XXXX (La.1/20/05), 891 So.2d 1268.
I disagree with the majority that the partial summary judgment rendered in favor of Gaylord should be affirmed.
The majority's reliance on Spears v. Roundtree Oldsmobile-Cadillac Co., 26,810 (La.App. 2 Cir. 4/5/95), 653 So.2d 182, and Alexander v. Lowes Companies, 96-2169 (La.App. 1 Cir. 9/19/97), 701 So.2d 239, to justify its interpretation on employer-employee liability under Louisiana Civil Code art. 2320, in my humble opinion, is misguided and misplaced. Both cases can easily be distinguished from our present case. Spears dealt with the requirements to hold employers liable for sexual harassment under two specific acts, the Louisiana antidiscrimination law (La. R.S. 23:1006) and the federal statute prohibiting sex discrimination of the civil rights act of 1964 as amended (42 U.S.C. § 2000e, et seq.). Alexander dealt with the liability of an owner for the negligent acts of a contractor to a third person.
The majority's decision runs contrary to existing jurisprudence and the interpretation of La. Civ.Code art. 2320 dealing with vicarious liability of employers for acts of negligence of its employees. The controlling case at the present time is Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968), which has been supported and strengthened by a recent case from the Louisiana Supreme Court entitled Richard v. Hall, XXXX-XXXX, pp. 5-6 (La.4/23/04), 874 So.2d 131, 137-138, wherein the Louisiana Supreme Court discusses, specifically, vicarious liability under Article 2320, as follows:
The premise of vicarious liability is codified in La. Civ.Code art. 2320, which provides an employer is liable for the tortious acts of its "servants and overseers in the exercise of the functions in which they are employed." Vicarious liability rests in a deeply rooted sentiment that a business enterprise cannot justly disclaim responsibility for accidents which may fairly be said to be characteristic of its activities. Ermert, 559 So.2d at 476, citing Ira S. Bushey & Sons v. United States, 398 F.2d 167, 171 (2d Cir.1968); 2 M. Plainol & G. Ripert, Traite Elementaire de Droit Civil No. 911 (La.St.L.Inst.Trans.1959); Douglas, Vicarious Liability and the Administration of Risk I, 38 Yale L.J. 584, 586 (1929). In determining whether a particular accident may be associated with *11 the employer's business enterprise, the court must essentially decide whether the particular accident is a part of the more or less inevitable toll of a lawful enterprise. Ermert, 559 So.2d at 476, citing 5 F. Harper, F. James & O. Gray, The Law of Torts, § 26.7, at 28 (2d ed.1986). When considering which risks the employer must bear under vicarious liability, the proper test bears resemblance to that which limits liability for workers' compensation, because the employer should be held to anticipate and allow for risks to the public that "arise out of and in the course of" his employment of labor. Ermert, 559 So.2d at 476, citations omitted. While the course of employment test refers to time and place, the scope of employment test examines the employment-related risk of injury. Russell v. Noullet, 98-0816, p. 4 (La.12/1/98), 721 So.2d 868, 871 (reh'g denied 1/15/99). The inquiry requires the trier of fact to determine whether the employee's tortious conduct was so closely connected in time, place and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business, as compared to conduct motivated by purely personal considerations entirely extraneous to the employer's interests. Id.

I further disagree with the majority that the pregnancy discrimination act, 42 U.S.C. § 2000e(k) prohibits an employer from making modifications to an employee's job for personal and public safety and welfare concerns. Granted, Gaylord had to keep Laura working. However, they could have made modifications to her particular job in the interest of public and personal safety concerns.
The issues come to us on a summary judgment. I feel there are material issues of fact in dispute, and the law is contrary to judgment rendered by the trial court. I would reverse the trial court in its entirety.
DOWNING, J., specially concurs and assigns reasons.
While we do not decide today whether a child in utero has a cause of action against its mother for negligent injuring, I can find no law that dispossesses a child of this cause of action. La. R.S. 9:571, which provides the general rule that a child may not sue his parents, only defers a child's cause of action until he or she is emancipated. The cause of action is not defeated. Walker v. Milton, 263 La. 555, 560-61, 268 So.2d 654, 655-56.
I suggest that the law and the Constitution of the state of Louisiana generally favors maintaining access to the courts rather than limiting it. In Bailey v. Khoury, 04-0620 (La.1/20/05), 891 So.2d 1268, the Louisiana Supreme Court recognized the right of plaintiff to sue for damages he or she suffered in utero.
The Louisiana Supreme Court or we will decide another day whether a child's right to sue its mother for in utero negligent injuring exists. And certainly the relationship between a child and its mother will be a factor. But the paramount consideration in Louisiana law would seem to be that set forth in La. C.C. art. 2315 A:
Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
I believe the Louisiana legislature and the courts have the ability to define the scope of a mother's duty to her children in utero. I also believe that to totally absolve a mother from responsibility for negligent acts that harm her children is bad policy.
WELCH, J., concurs in part and joins in the dissent for the reasons assigned by PETTIGREW, J. and assigns additional reasons.
*12 WELCH, J. dissenting.
I respectfully dissent from the portion of the majority opinion affirming the summary judgment in favor of Gaylord, finding that, pursuant to the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k) (1978) (PDA), "Gaylord had no choice but to keep Laura working." The majority finds that in the absence of any requests by Laura for lighter duty or to be moved to another assignment, "Gaylord could not have required her to do so" and therefore, "had no way to protect itself from Olivia being negligently injured...."
My research of the PDA, its purpose and intent and the jurisprudence interpreting it reveals that this conclusion is erroneous. Simply put, the PDA does not preclude an employer from giving preferential treatment to pregnant workers. Thus, Gaylord certainly could have found safer, lighter duties for Laura to perform and would have been in conformity with the intended and stated scope of the PDA.
The United States Supreme Court has already rejected the notion that an employer is prohibited by the PDA from implementing employment practices that favor pregnant women. In California Federal Savings and Loan Association v. Guerra, 479 U.S. 272, 287, 107 S.Ct. 683, 692, 93 L.Ed.2d 613 (1987), the Court stated:
[I]f Congress had intended to prohibit preferential treatment, it would have been the height of the understatement to say only that the legislation would not require such conduct. It is hardly conceivable that Congress would have extensively discussed only its intent not to require preferential treatment if in fact, it had intended to prohibit such treatment.
A recent case from the Eastern Division of the United States Northern District Court in Ohio, citing Guerra, and other jurisprudence, explained further:
The purpose of Title VII, including the PDA, is "to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of... employees over other employees. As demonstrated by its legislative history, the PDA was enacted to "guarantee women the basic right to participate fully and equally in the workforce, without denying them the fundamental right to full participation in family life." With the PDA, Congress made evident that it was protecting the decisional autonomy of women to become pregnant and to work while pregnant. Because the PDA is specifically designed to provide relief to working women and to end discrimination against pregnant workers, it does not preclude preferential treatment of pregnant workers.

(Emphasis added).
Asad v. Continental Airlines, Inc., 328 F.Supp.2d 772, 785-786 (N.D.Ohio 6/4/04). Therefore, I disagree with the conclusion that the PDA prohibited Gaylord from moving Laura to a safer position and preventing the accident.
Moreover, contrary to assertions and implications to the contrary, the labor agreement between Gaylord and its employees does not prohibit Gaylord from modifying the conditions of Laura's employment to remove her from any danger to her, particularly in her pregnant state. In fact, Section IV of the agreement, entitled Management, gives Gaylord the exclusive right to manage the mill and direction of the working force, including the right to "assign employees to work, transfer employees from one job to another or one department to another, ... to relieve employees from duty because of ... any other legitimate reasons...."
*13 Given my interpretation of the PDA and the jurisprudence, that such actions on behalf of Gaylord would not violate, and indeed would further the intent and purpose of the PDA, together with the contractual language in the labor agreement also authorizing such actions, I simply cannot go along with the majority's conclusion that there was nothing Gaylord could have done to prevent this accident and resulting injury. At the very least, there are genuine issues of material fact precluding summary judgment; therefore, I dissent from this portion of the majority opinion.
NOTES
[1] We granted rehearing to consider the merits en banc. We reach the same conclusion, with additional reasons, as did the original panel.
[2] In Hart v. New Orleans & C.R. Co., 1 Rob. (LA) 178 (1841), the Louisiana Supreme Court explained that under "the sense and meaning of the whole of [La. C.C. art. 2299, predecessor to current La. C.C. art. 2320], the exculpatory language cannot mean that "a master or employer could never be made responsible for the acts of his agents or servants, unless he were present and did not endeavor to prevent the act which caused the damage." See also McCubbin v. Hastings, 27 La. Ann. 713 (1875). And where a master or employer sends his servant or agent into the public to conduct personal or business affairs, he is choosing to commit acts, not prevent them, which could expose him to vicarious liability. This factual scenario is only remotely analogous to the one presented here, and under the sense and meaning of the whole of La. C.C. art. 2320, these cases are inapplicable to the fact situation before us.